HENRY HILTON, Appellant, v. CORNELIUS FONDA et al., Respondents.

A person may waive the observance by officials of a statute for his individual benefit.

A person having knowledge of the course prescribed by law to an official cannot look on and see the officer innocently depart from the prescribed course, and by silence, acts, words and seeming acquiescence, encourage

him in his departure, and then maintain an action against him in his personal capacity therefor; such conduct will be held a waiver of the right of the party to have an exact compliance with the statute in his favor.

The assessors of a town have no jurisdiction of the person of a non-resident of the county, whereby they can lawfully initiate a charge against him personally for a tax because of lands owned, but not occupied, by him in their town; they have jurisdiction to value the lands, but not to assess them to him, and their jurisdiction so to value them does not draw to it such further or other power, as that an assessment to the owner can be excused as an erroneous exercise of power.

Where, therefore, town assessors, with knowledge of the facts, assessed the lands of a non-resident to the owner personally, instead of assessing them in the mode prescribed by the statute. *Held*, that the act was an unofficial one, for which the assessors were personally liable.

Where, however, it appeared that the lands had been assessed the previous year to another non-resident, that prior to the assessment in question, the agent of the owner advised the assessors, while they were engaged in official duty, as to his title, stating that the land was assessed to the wrong person; that the said agent appeared before the assessors, and, after examining the roll, without objecting that the lands were illegally entered against the name of his principal, as that of the owner, objected to the valuation, which was thereupon reduced. *Held*, that this was an assent to the mode of assessment, and a waiver of the statutory requirement.

(Argued June 21, 1881; decided October 11, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 4, 1880, which affirmed a judgment in favor of defendants, entered upon an order nonsuiting plaintiff on trial.

This action was brought against defendants, who were assessors of the town of Saratoga Springs, Saratoga county, in the year 1878, to recover damages for an alleged illegal assessment and levy and sale thereunder.

The error alleged in the assessment was, that the property, which was certain real estate in said town owned by plaintiff, was assessed to plaintiff personally, instead of being assessed as prescribed by statute in case of lands of a non-resident not occupied by him.

The material facts are as stated in the opinion.

*Charles S. Lester* for appellant. The plaintiff being a non-resident of the town of Saratoga Springs, which fact was known to the assessors, they had no jurisdiction over his person. (*Dorn* v. *Backer*, 61 N. Y. 261; *Dorn* v. *Fox*, id. 254; *N. Y. & H. R. R.* v. *Lyon*, 16 Barb. 651; *Mygatt* v. *Washburn*, 15 N. Y. 321; *Dorwin* v. *Stickland*, 57 id. 492; *Palmer* v. *Lawrence*, 6 Lans. 282; *Suydam* v. *Keys*, 13 Johns. 444.) For this unauthorized and illegal act the defendants are personally liable. (*Wade* v. *Matheson*, 4 Lans. 158; *Clark* v. *Norton*, 49 N. Y. 246; *Nat. Bk.* v. *City of Elmira*, 53 id. 49; *Prosser* v. *Secor*, 5 Barb. 607; *Bailey* v. *Buell*, 59 id. 158; *Overing* v. *Foote*, 65 N. Y. 269.) Assessors cannot acquire jurisdiction by deciding that they have it. (*Nat. Bk.* v. *City of Elmira*, 53 N. Y. 49; *Dorn* v. *Backer*, 61 id. 261; *Dorn* v. *Fox*, id. 254; *In re Catholic Protectory*, 77 N. Y. 342; *Rocke* v. *Errington*, 7 H. L. Cases, 617–632; *Merritt* v. *Vil. of Portchester*, 71 N. Y. 309; *Williams* v. *Suprs. of Wayne Co.*, 78 id. 561.) One person may be in possession and another in occupation of the same property. (*Kerrains* v. *People*, 60 N. Y. 221; *Haywood* v. *Miller*, 3 Hill, 90; *People* v. *Supervisors*, 36 How. Pr. 548; *Douglass* v. *Mayor of New York*, 2 Duer, 110.) The plaintiff is not estopped by his acts from maintaining the legal responsibility of the defendants. (*Crawford* v. *Lockwood*, 9 How. Pr. 550; *Muller* v. *Pondir*, 55 N. Y. 334; *Dezell* v. *Odell*, 3 Hill, 215.) An estoppel cannot arise where both parties are fully aware of the facts. (*Hutchins* v. *Hubbard*, 84 N. Y. 24; *Shapley* v. *Abbott*, 42 id. 447.) A party is never estopped by an admission as to the law. (*Brewster* v. *Striker*, 2 Comst. 19.) Plaintiff by appearing before the assessors and not objecting did not thereby confer upon defendants jurisdiction to make a personal assessment. (*In re Faulkner*, 4 Hill, 598; *Phillips* v. *Allen*, 8 B. & C. 477; *Homan* v. *Brinkerhoff*, 1 Denio, 184; *Cadwell* v. *Colgate*, 7 Barb. 253; *Bissell* v. *Briggs*, 9 Mass. 469; *Pawling* v. *Bird's Exr.*, 13 Johns. 206; *Cuyler* v. *Trustees of Rochester*, 12 Wend. 165; *Starr* v. *Trustees of Rochester*, 6 id. 564.) Even appearance and express consent cannot confer jurisdiction.

(*Dudley* v. *Mayhew*, 3 Comst. 9; *Buckle* v. *Eckhart*, id. 132; *Oakley* v. *Aspinwall*, id. 547; *Beach* v. *Nixon*, 5 Seld. 35; *Harriott* v. *N. J. R. R. Co.*, 8 Abb. 284; *Davis* v. *Packard*, 7 Peters, 276; *Jones* v. *N. & N. Y. Co.*, 50 Barb. 193; *Coffin* v. *Tracy*, 3 Caines, 129; *Blin* v. *Campbell*, 14 Johns. 432; *Woodward* v. *Paine*, 15 id. 493; *Preston* v. *The City of Boston*, 12 Pick. 7; *McCormick* v. *Pa. C. R. R. Co.*, 49 N. Y. 303; *Bumstead* v. *Read*, 31 Barb. 661.) A party cannot waive a valuable right unless such waiver is based upon some consideration, or the facts estop the party from exercising it. (*O. & L. C. R. R. Co.* v. *V. & C. R. R. Co.*, 63 N. Y. 176; *Ripley* v. *Ætna Ins. Co.*, 30 id. 136; *Underwood* v. *Farmers' J. S. I. Co.*, 57 id. 500; *Brink* v. *Hanover Fire Ins. Co.*, 70 id. 593.)

*A. Pond* for respondents. It is the duty of assessors to assess all the real estate in their town, and place it on the assessment-roll, on some page or in some column thereof. (1 R. S. at Large, 360, § 1; 363, § 8; 364, § 11, 365, § 17; Laws of 1851, chap. 176, p. 332, § 1; p. 333, § 3; p. 334, § 8; *Johnson* v. *Learn*, 30 Barb. 616, 619; *Van Rensselaer* v. *Witbeck*, 7 id. 133, 137; *Van Rensselaer* v. *Cottrel*, id. 127; affirmed in Ct. of App., 1 Seld. Notes, 25; *Foster* v. *Van Wyck*, 41 How. 493.) The duty imposed upon the assessors, and which they cannot escape, to decide the various questions arising in the course of their inquiries pertaining to the assessment, and to make up the assessment-roll therefrom, is manifestly judicial in its essence and nature, and therefore an error, if one is committed by them in its performance, is a judicial error, for which they cannot be made or held personally liable in an action therefor. (*Van Rensselaer* v. *Witbeck*, 7 Barb. 133, 137; *Van Rensselaer* v. *Cottrel*, id. 117, 129; *S. C.*, affirmed. 1 Seld. Notes, 25; *Western R. R. Co.* v. *Nolan*, 48 N. Y. 514, 518; *Buff. & State Line R. R. Co.* v. *Sup'rs Erie Co.*, id. 93, 99, 105; *Foster* v. *Wyck*, 41 How. 493, 496, 497; *Barhydt* v. *Shepherd*, 35 N. Y. 238; *Swift* v. *Poughkeepsie*, 37 id. 511, 514; *Bk. Com.* v. *Mayor, etc.*, 43 id. 184, 186; *Weaver* v. *Williams*,

7 Wkly. Dig. 513 ; 75 N. Y. 30 ; affirmed, 10 Otto, 547 ; *Youmans* v. *Simmons*, 7 Hun, 466 ; *Horton* v. *Auchmoody*, 7 Wend. 200, 203 ; *Butler* v. *Potter*, 17 Johns. 145 ; *Voorhees* v. *Martin*, 12 Barb. 508 ; *Clark* v. *Holdridge*, 58 id. 61, 71 ; *Lange* v. *Benedict*, 73 N. Y. 12, [30, 36 ; *Hallock* v. *Dominy*, 69 id. 238 ; *Kenner* v. *Morrison*, 12 Hun, 204 ; *Bradley* v. *Fisher*, 13 Wall. 335, 353 ; *Scott* v. *Stansfield*, L. R., 3 Exch. 220 ; *Calder* v. *Halket*, 3 Moore's P., C. 28.) Any mistake of the assessors in making the assessment being made after acquiring jurisdiction of the subject-matter, even if it could have the effect of making their assessment erroneous, it would not thereby render it absolutely void, and hence their decisions are not subject to attack collaterally. (*Van Rensselaer* v. *Cottrel*, 7 Barb. 127 ; affirmed, Ct. of App., 1 Seld. Notes, 25 ; *Lorillard* v. *Town of Monroe*, 12 Barb. 161, 167 ; *Van Rensselaer* v. *Witbeck*, 7 id. 133 ; *Brown* v. *Smith*, 24 Barb. 419, 422 ; *Buffalo & State Line R. R. Co.* v. *Supervisors, etc.*, 48 N. Y. 93, 98, 99 ; *Hunt* v. *Hunt*, 72 id. 217, 229, 230 ; *King* v. *Poole*, 36 Barb. 242, 245 ; *Lange* v. *Benedict*, 73 N. Y. 12, 27–30, 33, 37 ; *Schaettler* v. *Gardiner*, 47 id. 404 ; *Roderigas* v. *East River Svgs Ins.*, 63 id. 460 ; *Bumpstead* v. *Reed*, 31 Barb. 661, 667 ; *Porter* v. *Purdy*, 29 N. Y. 106, 111 ; *People* v. *Liscomb*, 60 id. 559, 568.) Each plaintiff, in fact, occupied his or her premises at the time of the assessment, or at least the larger portions thereof. (*Kerrains* v. *The People*, 60 N. Y. 221 ; 1 R. S. 380, §§ 1, 2, 3 ; *The People* v. *Barker*, 48 N. Y. 70, 79 ; *Van Rensselaer* v. *Cottrel*, 7 Barb. 126 ; *Grover* v. *Edgewater*, 1 Hun, 486 ; Laws of 1851, p. 332, § 1 ; Laws of 1870, p. 1556, § 1 ; Laws of 1878, p. 160, § 1.) Plaintiffs having severally appeared before the assessors and made objection to the amount of the assessment against each, but not that any or too much property had been assessed to either, waived any such objection and made the whole assessment regular and valid. (*Clark* v. *Holdridge*, 58 Barb. 508 ; *Lange* v. *Benedict*, 73 N. Y. 12, 30, 36 ; *Butler* v. *Potter*, 17 Johns. 145 ; *Bradley* v. *Fisher*, 13 Wall. 335, 352–353, 349 *n.*) Plaintiffs, by appearing before the assessors as they did, and by actual

consent thereto, conferred jurisdiction upon them to make said assessments, and thereby waived any objection they might other. erwise have, if any, based on the fact of non-residence. ( *Van Rensselaer* v. *Cottrel*, 7 Barb. 127; *S. C.* affirmed, 1 Seld. Notes, 25; *Van Rensselaer* v. *Witbeck*, 7 Barb. 133, 139, 140; *Lorillard* v. *Town of Monroe*, 12 id. 161, 167; *Brown* v. *Smith*, 24 id. 419, 422; *Clapp* v. *Graves*, 26 N. Y. 418; *Overing* v. *Foote*, 43 id. 290; *Bell* v. *Pierce*, 51 id. 12, 16; *People* v. *Frederick*, 48 Barb. 182; 26 N. Y. 421; *Overing* v. *Foote*, 43 id. 290; 65 id. 263; *Bell* v. *Pierce*, 51 id. 16; 2 Burrill's Law Dict. 914; *Bradner* v. *Howard*, 75 N. Y. 417; *Dickson* v. *Wood*, 9 Hun, 191; *Lewin* v. *Utica*, 67 Barb. 456; *People* v. *Murray*, 5 Hill, 468.)

FOLGER, Ch. J. This is an action against these defendants in their personal capacity for an act done by them, which, it is claimed, was illegal, and damaging to the personal property of the plaintiff. The defendants were assessors of a town, and thereby had the opportunity or occasion for doing the act. The means used by them to do it were, in form of law, to put the name of the plaintiff upon the assessment-roll of the town, among the taxable inhabitants thereof, and thus to assess him personally for real estate lying in the town, and owned by him. His claim is that though the defendants held the office of town assessors they had no jurisdiction over his person, and had no official authority or legal power to initiate a charge against him personally, for a tax upon that real estate. The defendants rest their defense upon substantially two grounds. The first is: That they had clear jurisdiction to assess the real estate; that is to say, that they had jurisdiction of the general subject-matter of assessments for taxation of all lands in that town; that, having that jurisdiction, it was not an unofficial act to assess it to the plaintiff in person, but an erroneous official act for which they are not personally liable. The second is: That the plaintiff assented to the assessment to him personally, of the real estate owned by him in that town; that, by his conduct to the defendants as officers, he waived the objection, if it ex-

isted, that the lands could not be assessed to him personally; and was by that conduct estopped from now making the claim that it was a legal wrong so to assess them. The facts upon which these defenses are to be tested may now be stated. The lands valued by the defendants, and entered with their value in the assessment-roll against the name of the plaintiff did lie in the town of which the defendants were officers. One piece was unoccupied and unfenced. The other was in the actual possession of one Shelley, and he held that possession as the agent of the plaintiff. The plaintiff had his place of residence in New York city, and the defendants knew that he did. Mr. Lester, an inhabitant of the town, was the agent of the plaintiff, employed to examine the plaintiff's taxes and assessments, and adjust and care for the same. In 1877, the year before the act complained of was done, one piece of the lands was on the roll assessed to Mrs. Stewart. In 1878, before the assessment was made, Mr. Lester said to one of the defendants (while the latter was engaged in official duty and when saying so was pertinent to the doing of that duty), that that property should not be assessed to her, that it was owned by the plaintiff, and also, at the same time, said that the other piece belonged to the plaintiff; that they should be taken from Mrs. Stewart; that the plaintiff owned them. When the defendants met officially, in obedience to the statutes, to hear grievances, Mr. Lester came to them as the agent of the plaintiff. The assessment-roll was then looked at by Mr. Lester, and on it appeared the name of the plaintiff among the taxable inhabitants, with these lands entered against his name, at a valuation. Mr. Lester testified himself before the assessors, and brought other testimony, to the value of the lands, and to their value proportionately to other like lands in that town. The only grievance he made known to the defendants in behalf of the plaintiff was that the lands were valued too high and disproportionately. He did not name as a grievance that the lands were assessed to the plaintiff, or that the plaintiff's name was put among the taxable inhabitants of that town, or that the lands were assessed as the lands of a resident, and not as those of a non-resident. The

valuation of the lands was reduced by the defendants on the claim of the plaintiff then made by Mr. Lester though not as much as was asked for. We may now consider the legal positions of the defendants on which they rely for a defense.

*First.* The defendants had jurisdiction of the lands, to put a valuation on them and enter them on the assessment-roll, so as to subject them to the payment of certain public taxes. All lands within the State, owned by individuals, are liable to taxation, unless exempted by law. (1 R. S. 387, § 1.) These lands did not fall within any exemption. And all lands are to be valued for taxation, by the assessors of the town in which they lie (1 R. S. 389, §§ 1, 2, 3), with an exception not often occurring. (1 R. S., § 4.) The statutes make no difference in the gauge by which they are to be valued, they are to be set down at their full value. (1 R. S. 390, 391, § 8, sub. 3.) They do make a difference in the mode of stating upon the assessment-roll the result of the action of the assessors; which leads to a difference upon what or upon whom the charge of the tax will fix itself, when the roll is completed. Persons may be assessed in the town of their residence for lands owned and occupied by them therein, or owned by them therein and wholly unoccupied; or occupied by them therein and owned by another; or for adjoining lands, part of a farm or lot occupied by them in another town; and in another town of the county of their residence, for lands owned by them in that town. (1 R. S. 389, §§ 1, 4; Laws 1851, chap. 176; of 1855, chap. 427; of 1878, chap. 152.) In such case the ultimate tax levied by reason of the assessment is a charge against the person assessed, and is to be collected from his personal estate (1 R. S. 397, 398, §§ 1, 2, 5; Laws of 1842, chap. 318); nor can it by the sole virtue of that assessment be collected otherwise or elsewhere. (1 R. S. 463, § 27.) The lands may eventually be made to answer for the tax, but it is by proceedings subsequent to the first assessment. (1 R. S. 463, § 27; Laws 1855, chap. 427; *Newman* v. *Sup'rs Liv. Co.*, 45 N. Y. 676.) Hence it is, that the action of the assessors in assessing lands to a person initiates a charge upon him personally. On

the other hand, if lands in a town owned by one not a resident of the county are occupied by a person other than the owner, they may be assessed to the occupant (Laws of 1878, *supra*), and where lands in a town are unoccupied, and not owned by a person residing in the town, they are to be named "lands of non-residents," and are to be assessed in still another mode. (1 R. S. 389, § 3.) By which provisions it results, that it is the occupant in one case, and the land in the other, that is charged with the tax, and that the owner is not charged. (1 R. S. 391.) The land is to be assessed without the name of an owner, and set down in the roll apart from the names of persons. (1 R. S. 391, §§ 11, 12, 13.) It is only when there is occupation of a tract, or part of it, by a resident of the town, that the assessment may be made against the name of a person, and then the name used must be that of the occupant resident in the town, or of the owner resident in the county. (1 R. S. 392, § 13, sub. 4; Laws of 1878, *supra*.) If the tax on land assessed as non-resident lands remains unpaid, it is to be got only by a sale of the lands. (1 R. S. 390, § 10; 402, § 26; 407, §§ 52, *et seq.;* Laws of 1878, *supra*.) It is now seen that the assessors of a town have no power by law to assess lands though lying in their town, to one who is not a resident of that town or of their county. They have no jurisdiction of his person, whereby they can lawfully initiate a charge against him personally for a tax because of lands owned by him in their town. They have jurisdiction to value the lands, none to value them against him. The jurisdiction to value the lands as those of a non-resident, does not give jurisdiction to assess them to the owner he being a non-resident. The defendants had then no power by statute to put these lands against the name of the plaintiff and thus charge him a tax therefor. Nor in the case in hand do we see that the jurisdiction to value the lands for the purpose of a tax drew to them such further or other power, as that an unlawful act of assessing them to a person who, though the owner, was not a resident of the town or county, nor an actual occupant of the lands, can be excused as an erroneous excess of power.

In the case in hand they knew all the while that the owner of the lands was not a resident of the town or county; that he was not in person occupying the lands; so that they made no mistake of fact, on an inquiry instituted by them into facts with a view to official action. The facts were as plain and as well known to them from the outset as now, and so was the law. Both showed them that they could not, of their own head, with no assent, or act or omission of the plaintiff to warrant it, assess these lands to him personally. Jurisdiction of the subject-matter, that is, the power to make these lands liable to a tax ultimately to be levied upon them; gave no power or jurisdiction to make an assessment on account of the ownership of them, against the plaintiff. (*Newman* v. *Sup'rs of Liv. Co.*, *supra.*) There can be no pretense here, that because the defendants had jurisdiction of the subject-matter they also had jurisdiction to inquire whether the facts gave them jurisdiction of the person, and that making inquiry into that fact they formed a mistaken judgment, is but a judicial error which may not be charged to them personally. They made no inquiry or any mistake, nor did they adjudge upon inquiry, and on mistake of fact resulting therefrom. They knew how the fact was, and with knowledge of it, and with knowledge that power was denied by reason of that fact, they assumed jurisdiction of the person of the plaintiff. Hence they may not be justified under this head of the defense set up by them. We do not mean to say that they would be justified if, being authorized to inquire as to jurisdictional facts, they made inquiry and honestly erred in conclusion thereon. That phase of the question is not presented in this case. When it arises the decisions in *Nat. Bk. of Chemung* v. *City of Elmira* (53 N. Y. 49), *Dorn* v. *Backer* (61 id. 261), *In re N. Y. Catholic Protectory* (77 id. 342), and the like, will be pertinent. The defendants make a point, that the plaintiff was in the actual occupation of one part of lands assessed, by his agent Shelley; that there is no provision in law for the assessment of lands occupied by the owner of them who does not reside in the town; that, therefore, as there is the general injunction of the statutes that all lands shall be

assessed in some mode, and the defendants were bound to obey that general injunction, they had the right, in the absence of a specific direction how to assess in the particular case, to devise a mode for themselves, and if they acted therein in good faith and prudently, they are not liable. It needs not that we consider this point. It has force, if at all, from the assumption that the plaintiff, by Shelley, his agent, was himself the occupant of a piece of the lands assessed, and it would need to be determined whether, in the view of the tax laws in such case, Shelley or the plaintiff was the occupant. This we need not do. There was one piece of the lands unoccupied and unfenced, and though this point of the defendant should be upheld by us, we should still need to consider whether there was other matter of law or fact that will uphold the dismissal of the complaint at Circuit, as to the whole cause of action. As we have found that other matter, it is better to rest the whole case on that.

*Second.* It is too plain for question that the plaintiff never objected to the assessors, that the lands were illegally entered against his name as that of the owner; that his name was placed on the assessment-roll among the taxable inhabitants of the town, and that thus his lands were assessed as those of a resident or occupant, and not as non-resident lands. He could have gained nothing by making such an objection and having it prevail, save perhaps a delay in having the tax collected, which could not have been of any advantage or concern to him. The property assessed was of so great value in comparison with the amount taxed upon it, that it was no object to him, and could not have entered into his contemplation, or that of Mr. Lester, his agent, to dread or seek to avoid a personal liability for some tax upon it. Had it been assessed as non-resident land it is absurdly improbable that he would have suffered it to have gone the course of the tax law, until it had been sold by the comptroller of the State for arrears of unpaid taxes. There must have been the same result to him, whether he was personally assessed for the lands, or whether they were assessed. In either case, ultimately, he would from his personal property

pay any tax for which they were finally legally liable. We are prepared then easily to believe, that the matter in agitation between his agent and the assessors was that of the value to be put upon the lands, and not the mode in which that valuation should appear upon the assessment-roll; that the grievance presented to the assessors was that the lands were too highly and unequally valued, and not that they were valued to the plaintiff as owner. We can readily perceive that the course of assessment for one year at least before that of 1878 had been to assess the lands to a person as the owner; that the objection made to this course was solely that the wrong person was named, and that the suggestion of true ownership was to indicate that the right owner should be the person named; that it was intended by that suggestion so to indicate; that the suggestion was taken by the assessor so to indicate, and that it was perceived by the agent that the assessor so understood it. We can also readily perceive, that when, at the meeting to hear grievances, the agent, looking at the roll and seeing the name of the plaintiff upon it as the owner of the lands, made no objection thereto, but confined his testimony and his written brief to the matter of value, he was liable to be understood as tacitly assenting to all of which he did not openly complain; that he was so understood; that he was bound to know that he was likely to be so understood; that he did not mean to be understood otherwise, and did perceive that he was not understood otherwise. It is not to be doubted for a moment if he had spoken of the error made in placing the name of his principal on the roll as a taxable inhabitant and the owner of the lands, but that it would have been corrected. The whole action of the plaintiff through his agent in 1877 and 1878, was calculated to inform the assessors that the plaintiff was content with, and assented to the assessment of these lands to the person who owned them. It is hard to conceive that their course in entering these lands upon the roll was not influenced and induced by the conduct of the plaintiff through his agent in the acts and words of the latter; that it was not taken with his prior knowledge, that it would be, and that it had not his

tacit assent. In that state of facts, a statute has been disregarded by the assessors. That statute was made for public ease in the collection of taxes, and it may sometimes result to the benefit of a private person. So far as the public is concerned, its ultimate purpose has been fully served, and no complaint is made on that hand. So far as a private person is concerned, he may waive the observance by officials of a statute for his help. We cannot but think that, in the case in hand, the plaintiff's conduct did amount to a waiver of the statutory requirement upon the defendants to follow a certain course in subjecting his lands to taxation. The waiver was in such a way as to be tantamount to a request that the lands be assessed to him instead of to Mrs. Stewart. It is to be inferred that Mr. Lester knew that in 1877 they had been assessed to her. The next year he told one of the defendants that that assessment was wrong. He did not specify the wrong to be the putting the name of a person on the roll as the owner among the taxable inhabitants, but his suggestion indicated the whole wrong to be the putting these to the name of Mrs. Stewart instead of the name of the plaintiff. This was said to that defendant while he was making inquiry, by virtue of his office as assessor, after taxable property and taxable persons. It is not consistent with the usual candid operations of the mind in making suggestions, and in reaching conclusions from suggestions made, for Mr. Lester not to have meant, and not to have intended to have been taken to mean, or for the defendant not to have understood Mr. Lester to mean, that the assessment for those lands should be changed from the name of Mrs. Stewart to that of the plaintiff. And so, when Mr. Lester appeared before the assessors, sitting as a board to hear complaints, he must have meant, and must have been understood to have meant, and must have been conscious that he was so understood, to make complaint of naught, but that there was excessive and disproportionate valuation, and to acquiesce in the assessment to the plaintiff as the owner. In such a state of circumstances, these defendants, while town officers, did the act for which they are now sued as persons,

and a judgment sought against them in their personal capacity. It is averred of them in the pleadings that they intended to injure the plaintiff by that act, and to compel him thereby to pay an unjust and illegal tax. It is an action *ex delicto* for a wrong done, and with intent to do it. May a person having knowledge of the course prescribed by law to an official, look on and see the officer innocently turn aside therefrom, and withhold from saying the word that would recall him to the lawful track, may he, by silence and acts and words and seeming acquiescence, encourage him in his departure, and then maintain an action against him in his personal capacity therefor? We think not. Such conduct the law will hold to be a waiver of the right of the party to have an exact compliance with the statute in his favor. The law will hold him as assenting to the wrongful act, and apply the maxim: *Volenti fit non injuria.* It is a general rule of the English law that no one can maintain an action for a wrong where he has consented to the act which he alleges has hurt him; and this principle has often been applied under states of facts, showing that though the defendant was in the wrong, the plaintiff's negligence has contributed to produce the damage consequential on the act complained of. (Broom's Legal Maxims, * 265; *Byam v. Bullard*, 1 Curtis, 101; *Gould v. Oliver*, 4 Bing. N. C. 134.) The plaintiff cites *Preston* v. *City of Boston* (12 Pick. 7) as an adjudication that consent given to be assessed in a certain jurisdiction does not make legal an assessment there made. We doubt if the facts of that case, and the opinion of the court therein, will sustain so broad a proposition. But we need not tarry to solve that doubt. The same court, in *Pease* v. *Whitney* (8 Mass. 93), held, that where one is assessed in the wrong place, at his own request, though the assessment be illegal, he cannot maintain trespass on account thereof against the assessors.

Our judgment is, that, though the act of the defendants was illegal, the conduct of the plaintiff was such that he must be held as concurring therein, and that, therefore, he may not

maintain an action because of it against the defendants in their personal capacity.

We think that the trial court did not err in allowing the questions to the defendant and witness Hays, and to the defendant and witness Curtis, and the testimony of the conversation between Hays and Mr. Lester in 1877.

The judgment should be affirmed.

All concur.

Judgment affirmed.