PARMENTER *v.* FITZPATRICK *et al.*

(*Supreme Court, General Term, Third Department.* May 21, 1891.)

1. SALE—WHAT CONSTITUTES—CHATTEL MORTGAGE.

P., a creditor of S., took a bill of sale of S.'s stock of goods in consideration of P.'s assumption of $13,000 of S.'s indebtedness, and then left the goods in S.'s hands, where they were levied on by the sheriff, under executions issued after the transfer from S. to P. In an action by P. against the sheriff for conversion, the court instructed the jury that it was for them to determine under all the evidence whether the writing was intended by the parties as an absolute sale, or as a security in the nature of a mortgage, and, if a mortgage, then that the plaintiff could not

recover for want of recordation. *Held* that, the jury having found for plaintiff, the court must assume that they found the transfer in question to have been an absolute sale.

2. SAME—TRANSFER OF POSSESSION—BONA FIDE PURCHASER.

Under 4 Rev. St. N. Y. (8th Ed.) p. 2591, § 5, declaring that sales of goods and chattels without immediate transfer of possession shall be conclusive evidence of fraud in favor of creditors of the vendor, unless the buyer shall make it appear that the same was in good faith, the burden of proving the *bona fides* of the sale is cast upon the buyer; and, there being evidence on which the jury might have found either way, their finding for the buyer will not be disturbed, in the absence of evidence of passion, prejudice, or partiality on their part.

3. TENDER—SUFFICIENCY—DISCHARGE OF LIEN.

Plaintiff, a purchaser of goods liable to the lien of an execution, obtained information from the sheriff in a conversation with him as to the amount of the lien, and when he next saw him offered him the amount thereof, saying: "I tender you $80 for that judgment." *Held*, that the jury was authorized to find from this evidence a sufficient tender on the part of plaintiff to discharge the lien of the execution on the purchased goods.

Appeal from circuit court, Clinton county.

Action by Jacob Parmenter against J. J. Fitzpatrick, as sheriff of Clinton county, and some judgment creditors of A. C. Smith & Co., to recover for the alleged wrongful taking and conversion of a stock of merchandise. The summons was served only upon the defendant Fitzpatrick. The complaint alleged that at a time therein stated the plaintiff was the owner and in possession of a stock of goods, wares, and merchandise which he purchased of A. C. Smith & Co. on the 2d of April, 1888, subject to a lien for $76.27 in favor of C. P. Moses; and that on or before the 15th of April, 1888, the defendant took possession of the whole of such stock and property, and converted the same to his own use; that the value of the property taken was. $2,500 over and above the lien; and that, before the commencement of this action, he tendered to the defendant Fitzpatrick the amount of the lien, and demanded possession of the goods, which demand was refused. The answer of the defendant denies that he took possession of the plaintiff's property, and the tender of the amount of Moses' lien. The answer sets up the recovery of a judgment in the supreme court by *Moses* vs. *A. C. Smith & Co.*, on the 20th of March, 1888; the docketing of the same in Clinton county on the 21st day of March, 1888, on which an execution was issued to this defendant on the 21st day of March, 1888, as sheriff of Clinton county. Also, the recovery by different persons or firms of four other judgments in the supreme court against A. C. Smith,—one on the 14th of April, 1888, for $518.79, which was on that day docketed in Clinton county, on which execution on that day was duly issued to this defendant as sheriff; one on the 13th day of April, 1888, for $3,309.63, which was also duly docketed in Clinton county; and on the same day two other judgments were rendered in the supreme court against A. C. Smith & Co.,—one for $1,491.88, and one for $3,716.63, —all of which were on that day docketed in Clinton county, on each of which executions were, on the 15th day of April, 1888, duly issued to this defendant as sheriff; and that upon all the executions in his hand he, on the day of the issuance of the same, levied upon the property mentioned in the complaint in this action, and, after having duly advertised the same, sold said property under and by virtue of said executions; and that the same did not on such sale sell for enough to satisfy the first three executions. On the trial of this case upon the issues so made the plaintiff recovered, and from that recovery the defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Beckwith, Barnard & Wheeler,* (*George H. Beckwith,* of counsel,) for appellant. *Riley & Conway,* (*J. F. Conway,* of counsel,) for respondent.

MAYHAM, J. The plaintiff claims title to property alleged to have been converted by the defendants under an instrument in writing dated April 2,.

1888, which he insists is an absolute bill of sale, conveying to him the title to all the property in controversy, and that the consideration expressed therein was fully paid by his assumption and payment of $13,000 of notes made by A. C. Smith & Co., his vendors, for the debts and liabilities of that firm, and on which the plaintiff was an accommodation indorser. The defendant and appellant insists that the writing under which plaintiff claims title was, in effect, but a chattel mortgage, and intended only as security; and that, as against the defendant, who represented the judgment creditors of the mortgagor, the same, not having been filed as required by law, was void. The instrument is in form a bill of sale, and is as follows:

"PLATTSBURGH, April 2, 1888.

"Jacob Parmenter bought of A. C. Smith & Co. the entire stock of goods, wares, and merchandise of every name and nature. [Here follows a particular designation of property, and the place in which it was.] This sale is intended and does include all the property belonging to us in said building or store, No. 71 Margaret St., and also all the organs, pianos, musical instruments, or sewing-machines which we have placed in the dominion of Canada, Vermont, or Essex, N. Y., for the sum of $13,000. For and in consideration of said purchase said Parmenter has paid us the said sum, $13,000, and we hereby acknowledge the payment of the same. We further hereby agree to give the said Parmenter peaceable possession of said store and property whenever he shall demand the same.          A. C. SMITH & CO."

Upon the face of this paper it purports to be an absolute "bill of sale," reciting the payment of consideration; and such sale, if sale it was, was before the liens of any of the executions in the hands of the defendant could attach, except the execution on the judgment of March 2, 1888, for $76.27. But the appellant claims and insists that the testimony of the plaintiff shows that the property was taken by him only as security for his indorsement. The alleged consideration was the taking up and retiring by the plaintiff of the vendors' notes to the amount of $13,000, and the plaintiff insists that he paid that consideration, and actually took up and retired that amount of those notes; and in his testimony given on the trial he testified: "I have paid and retired $13,000 of these notes of A. C. Smith & Co., pursuant to that agreement." There was other evidence tending to show that this was an absolute "bill of sale," and there is also evidence offered by the defendant tending to show that it was a security in the nature of a mortgage. But on the trial it was submitted to the jury by the trial judge under proper instructions, for them to determine, under all the evidence, whether the writing was intended by the parties as an absolute sale, or as a security in the nature of a mortgage; and, if they found it was but a mortgage, or as a security for plaintiff's indorsement of these notes, then the plaintiff could not recover. That was a correct interpretation and exposition of the law, (*Dutcher* v. *Swartwood*, 15 Hun, 31; *Stimson* v. *Wrigley*, 86 N. Y. 339;) and it was properly left to the jury, because a bill of sale or a deed absolute upon its face may be shown to be only a mortgage or security for the performance of some act by the vendor or grantor. As a finding by the jury that this was intended as a mortgage would have resulted in a verdict for the defendant, we must assume on this appeal that, as their verdict was for the plaintiff, they must have found that the instrument was what it purports to be,—an absolute bill of sale. As was said by the court in *Wolf* v. *Insurance Co.*, 43 Barb. 405: "If either of these propositions is to be regarded as established by the verdict, it is the latter, according to the intendment of the law that the verdict settles in favor of the prevailing party every question of fact litigated on the trial. We are not to intend that the jury found either of the issues in favor of the unsuccessful party for the purpose of overturning the verdict. On the contrary, we are required to hold that every issue was found against the unsuccessful party, if necessary to sustain the verdict." We think the rule

above laid down is correct when there is sufficient evidence to uphold the finding of the jury, and by their verdict we must conclude that they found the transaction between A. C. Smith & Co. and the plaintiff a sale,—a conclusion which, when found by the jury, is supported by sufficient evidence to uphold it.

The jury having found it a sale, the next inquiry arises as to a valid sale, under the circumstances, against the defendant, who is proceeding under valid judgments and executions against the property of the plaintiff's vendors. It is insisted by the appellant that if it be held that this was an absolute sale as between the plaintiff and his vendors, still it is presumptively fraudulent and void as to this defendant and the judgment creditors whom he represents. As to the judgment and execution of March 2, 1888, on which the defendant had a levy before the execution of the bill of sale, the plaintiff conceded the lien if the execution is valid, and seeks to avoid its effect by a tender, which will be discussed in a subsequent part of this opinion. But as to all the other judgments and executions under which the defendant seeks to justify his interference with this property, the plaintiff insists that he has the title, and that his vendors and the creditors of his vendors have no right to it. The bill of sale was executed and delivered on the 2d of April, and by its terms the plaintiff had a right to the possession whenever he shall demand the same, and he took possession on the 5th of April. The statute declares that "every sale made by a vendor of goods and chattels in his possession or under his control, * * * unless the same be accomplished by an immediate delivery, and followed by an actual and continued change of possession of the thing sold, * * * shall be presumed to be fraudulent and void as against creditors of the vendor, * * * and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the person claiming under such sale * * * that the same was made in good faith, and without any intent to defraud such creditors." 4 Rev. St. (8th Ed.) p. 2591, § 5. Section 6 of the same title defines the term "creditors" as used in section 5 to be "any who shall be creditors of the vendor at any time while the chattels shall remain in his possession or under his control." Section 4 of title 3 of the same chapter provides that the fraudulent intent under this provision of statute shall be a question of fact, and not of law. Under these provisions of law the burden was cast upon the plaintiff in this case to satisfy the jury that this was a valid and *bona fide* sale of goods, and that the same was made by the parties to it in good faith, and without any intent to defraud the creditors of the vendors.

It is true that by the bill of sale, absolute in its terms, the title as between the vendors and vendee passed at its delivery, and there is evidence in the case that the vendors were to have the proceeds of the sales at the stores after that time; but that does not answer the requirements of the statute of fraud, which, as we have seen, requires an actual delivery at the time of the sale; and the learned trial judge held that, if the jury found that it was an absolute sale, it not being followed by an immediate change of possession, and presumptively fraudulent and void under the statute, it was for the jury to determine whether the sale was made in good faith, or with intent to defraud creditors. There was no exception to this ruling, and we think it a correct application of the law. Upon this disputed question of fact there is evidence upon which the jury could probably have found either way, and their finding would on appeal have been sustained whichever way they found. As was said by FINCH, J., in *Stimson* v. *Wrigley,* 86 N. Y. 337: "The question of fact is not without difficulty. There was some contradiction in the testimony, or at least to the inference to which it led; and, where that is the case, the conclusion of the trial court upon the facts are not open to our review." It is true that that rule is not as inflexible when applied to the view by the general term of this court as it is in the court of appeals; yet in this court, unless

there is such a preponderance of evidence against the verdict as to evince prejudice or passion, the verdict of a jury upon disputed questions of fact remains a part of our judicial system. Their verdict should be respected by appellate courts unless it is manifest to the appellate court that such verdict is the result of passion, prejudice, or clear misconception of the law, as laid down by the trial judge. The jury having found in favor of the plaintiff upon the question of fraud, (which in this case is a question of fact, made so by statute, as we have seen,) and there being evidence to uphold their finding, it must be sustained on this appeal. Nor do we think their verdict should be interfered with on the ground of excessive damages. There was evidence to uphold the same. Before the purchase on the bill of sale the defendant had levied the execution issued on the judgment of March 2, 1888, for $76.27, on the goods in question, and he had, therefore, as against the plaintiff's vendor before the sale, and the plaintiff after the sale, a valid lien on the same. This lien the plaintiff on the 19th of April sought to extinguish by payment of that execution, and for that purpose on that day he tendered to the defendant $80 in gold in payment of that judgment and satisfaction of that execution. It is true that in some of the technical rules in respect to the making of a tender the evidence is not quite complete, but we think enough was proved to authorize the jury to find that the plaintiff offered to pay the small execution which had been levied on the property before the execution of the bill of sale, which was refused by the defendant, who had at that time other executions against A. C. Smith & Co., the liens of which defendant claims had attached; and the $80 tendered was insufficient to satisfy all the executions in his hands at the time of the tender. It is not claimed that the amount tendered was insufficient to pay the execution, but it is insisted that the same was not absolute, but conditional, and therefore ineffectual as a tender; but we think the jury were authorized by the facts disclosed to find that the plaintiff offered to pay and satisfy the execution. The law seems well settled that a tender by a judgment debtor to the sheriff of a sufficient sum to satisfy the execution discharges the lien of the execution upon property levied upon by virtue thereof. *Tiffany* v. *John*, 65 N. Y. 314. The offer of payment or tender in the case at bar is different from the case of *Noyes* v. *Wyckoff*, 114 N. Y. 204, 21 N. E. Rep. 158. In this case the tender was upon the express condition that it was "in payment and extinguishment of his lien." In this case the plaintiff swears that he and the defendant had a talk about this execution, and the defendant, at plaintiff's request, gave him the figures $76.27. In describing what occurred at the time of the alleged tender, witness says: "The next occasion when I went to see the sheriff was when I made the tender. That was the 14th of April. I took the money out. It was in gold. I said, 'I tender you $80 for that judgment;' but he refused, and did not receive it." The jury might well understand that this was an offer of payment on account of the execution, without imposing any conditions upon the same, except such as the law would attach to the transaction. The plaintiff having acquired the title to this property by the bill of sale on the 2d of April, and taken actual possession on the 5th, and before any actual levy was made by the defendant on the executions issued after the 2d, his title, having been acquired before actual levy on such other executions, would not be affected by them. "The title to personal property, acquired before the actual levy of an execution by a purchaser in good faith, and without notice that the execution has been issued, is not affected by an execution delivered before the purchase was made to an officer to be executed." Code Civil Proc. § 1409. We have examined the several exceptions to the ruling of the learned judge on the trial, and find no error in the same for which judgment should be reversed. Judgment affirmed, with costs. All concur.