FANNIE G. PARSONS, Appellant, *v.* CHARLES W. PARKER, Respondent.

*Occupied lands of non-residents — assessment thereof — the owner need not inform the assessors of an error — independence of every assessment — consent that lands be assessed in the name of one not the owner — tax sale void where the tax has been paid.*

Occupied lands owned by a person who is a non-resident of the town in which they are situated, but a resident of the county, may be assessed to the occupant as lands of non-residents, or to the owner, and when they are not assessed in either manner, but as resident lands to a person who is neither the owner nor the occupant, the assessment is void.

A non-resident owner of occupied land is under no obligation to inform the assessors that his land is erroneously assessed in the name of a person who is neither the owner nor the occupant of the same.

Every assessment is independent of every other assessment, and nothing that occurred in relation to the assessment of certain property in previous years can affect the assessment thereof for any subsequent year, and there is no presumption that the assessors of any one year were the assessors in previous years.

The fact that the husband of the owner of property sent for and paid the tax bills thereon, which were made out in his name, cannot be deemed an assent that the premises should in subsequent years be assessed in the name of the husband as owner instead of in the name of his wife.

The sale of land for the non-payment of taxes where the taxes have in fact been paid is a void act, and a deed based on such a sale conveys to the purchaser no interest in the land.

APPEAL by the plaintiff, Fannie G. Parsons, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 30th day of December, 1893, upon the decision of the court rendered after a trial at the Westchester Special Term dismissing the plaintiff's complaint.

*William P. Fiero,* for the appellant.

*Wilson Brown, Jr.,* for the respondent.

BROWN, P. J. :

This action was brought to recover possession of two lots of land in the town of Mamaroneck, Westchester county, described as Nos. 117 and 118 on a map of lands of Thomas R. Hawley.

Hawley and his wife conveyed the lots to Henry Parsons, the plaintiff's husband, in 1871, and in 1874 they were conveyed to the plaintiff.

The defendant is in possession and claims title under two tax leases made by the supervisor of the town pursuant to a sale of the lots for unpaid taxes under an assessment for the years 1889 and 1890, and the principal question presented is as to the validity of such assessments and the subsequent proceedings resulting in the lease.

The lots were, prior to 1871, a part of the " McIntyre farm," but subsequent to that year were assessed separately from said farm as resident land in the name of Henry Parsons, and the only difference in the assessment for the two years in question is that in 1889 they were assessed as one and in 1890 as two parcels. Parsons and wife were subsequent to 1882 residents of the town of Rye in Westchester county, and plaintiff never resided in Mamaroneck. The defendant claimed, and the court found, that at the time of the assessment the lots were occupied by one S. W. Parker, defendant's father, and, although the appellant contends that such finding is without support in the evidence, it is not material to the question presented.

The assessment made did not conform with any provision of the statute regulating the manner in which property is assessed. (2 R. S. [8th ed.] 1094, §§ 1, 2, 3.)

Occupied lands owned by a person who is a non-resident of the town in which they are situated, but a resident of the county, may be assessed to the occupant as lands of non-residents or to the owner. (Id. § 2.) The lots in question were not assessed in either manner specified, but as resident lands to Henry Parsons, who was neither owner or occupant. The assessment was, therefore, void. (*Hilton* v. *Fonda*, 86 N. Y. 339; *Stewart* v. *Crysler*, 100 id. 378; *Sanders* v. *Downs*, 141 id. 422.)

The defendant does not seriously contend that the assessment was valid, but he claims that the plaintiff assented to the mode of assessment, and is now estopped from claiming it to be void. This claim is based upon the fact that up to 1889 the plaintiff's husband, acting as her agent, annually sent for and paid the tax bills, and never informed the assessors that he had conveyed the lots to his wife, but permitted them to believe that he was the owner and to assess them in his name. *Hilton* v. *Fonda* (*supra*) is relied on to sustain this contention, but that case has no application to the facts of this action.

The plaintiff there sought to recover damages from the assessors. personally for an illegal assessment, and because his agent informed defendants that plaintiff owned the lands, and appeared before them when they met officially, and claimed and gave evidence to the effect that the valuation was too high, but made no claim that the lands were assessed as lands of a resident, the court held that the plaintiff waived the observance of the statute and assented to the mode of assessment, and could not thereafter maintain an action for personal damages against the assessors, but it was also held that the assessment made was illegal.

In this case there is no question presented as to the right of the owner of the land to enforce a personal liability against the assessors. We are concerned only with the question whether the assessment was so made as to create a charge upon the land, and it would seem to be too clear to require argument that there can be no lien upon land as the result of a void assessment. But the evidence does not support the finding that the plaintiff consented to the mode of assessment. Nothing was ever done or said by her or her husband with reference to the assessment in question. The plaintiff was under no obligation to inform the assessors of her ownership. The duty to inquire as to the names of taxable inhabitants is enjoined upon the assessors by statute, and as each assessment is independent of every other assessment, nothing that occurred in prior years could have application to the assessments for 1889 and 1890. Indeed, there can be no presumption that the assessors of those years were the same persons who held the office in prior years. The evidence upon which the claim of waiver is based is that plaintiff's husband sent for and paid the tax bills which were made out in his name, but there is no evidence that either he or plaintiff ever saw or examined the assessment roll, or appeared before the assessors in their official capacity, or had any conversation with any of them in reference to the lots.

The payment of the taxes of one year cannot be deemed to give assent to an illegal mode of assessment in subsequent years, and the evidence does not permit the conclusion that plaintiff misled the assessors into the performance of an illegal act, or that she waived any of her rights. It follows that the defendant acquired no title to the lots by leases based on the assessment for 1889 and 1890.

The defendant, however, claims title under two other tax leases antedating the assessments of 1889 and 1890. One bears date October 27, 1877, and the other October 5, 1883. Neither the assessment nor the tax upon which either of these leases rest was proven, and they do not appear in the case, but reliance is put upon the statutory provision that "such lease shall be presumptive evidence that such tax was legally imposed, and of the regularity of all the proceedings and of the sale." (Laws 1874, chap. 610, § 6.)

We are of the opinion that enough appears in evidence to overcome the presumption of regularity given by law to the leases and to show that they convey no title to the lots in question. As already stated, the lots were a part of a tract of land of about ninety acres known as the McIntyre farm, owned by Thomas R. Hawley prior to 1871. The leases of 1877 and 1883 described by bounds "all that * * * parcel of real estate * * * known as Thomas R. Hawley's McIntyre farm, 86 acres," etc., and the statute shows that the proceedings to sell related to taxes for the year immediately preceding the sale.

The presumption to be drawn from the leases, therefore, is that the tax for the non-payment of which the McIntyre farm was sold was legally imposed and was a charge upon lots 117 and 118 and that the proceedings for the sale were regular. But the court found that the lots were conveyed by Thomas R. Hawley to Henry Parsons in 1871, and that in and subsequent to that year they were assessed separate from the McIntyre farm and that the taxes were paid for every year to 1889, and the case shows in detail the amount of each annual tax and the time and manner of its payment.

It is clear from this evidence that the leases of 1877 and 1883 have no relation to the lots in question, and if the lots lie within the general description contained in those instruments the presumption of the regularity of the proceedings for the sale, so far as it apparently applies to them, is entirely overcome by the fact that the tax imposed on them was paid.

The sale of land for taxes where the tax has been paid is plainly a void act, and a deed based on such a sale conveys to the purchaser no interest in the land.

The other deeds introduced in evidence by defendant, which purport to convey the McIntyre farm, were all based on a conveyance

by Thomas R. Hawley subsequent to 1871, and do not transfer any interest in or title to the lots in question.

The plaintiff clearly established her right to the possession of the property, and the judgment must be reversed and a new trial granted, with costs to abide the event.

CULLEN, J., concurred; DYKMAN, J., not sitting.

Judgment reversed and new trial granted, costs to abide event.