to any of these contracts as an asset. The claim, therefore, that the defendant held the contract between him and the Berliner Company as trustee for the National Gramophone Company and of its successor cannot be sustained.

The material facts are found by the court, and, in view of the documentary evidence upon which they rest, it is manifest that they cannot be changed upon a new trial. The court has, however, found as matter of fact and in the findings of fact that it was the intention of the parties that defendant should account under the assignment for any profits he might realize on or by virtue of his contract with the Berliner Company, and that said assignment was never canceled or superseded in toto by the reassignment agreement, and therefore, although these findings are, strictly speaking, conclusions of law, yet it is not entirely clear that we would be justified in changing them, or in dismissing the complaint without changing them.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

(61 Misc. Rep. 345.)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. KENO et al.

(Supreme Court, Special Term, Onondaga County. December, 1908.)

1. TAXATION (§ 376*) — ASSESSMENT OF FRANCHISES — AUTHORITY OF VILLAGE ASSESSORS.

   Under Tax Law (Laws 1899, pp. 1590, 1592, c. 712) §§ 42, 45, the state board of tax commissioners must annually fix and determine the valuation of each special franchise, subject to assessment in each city, town, or tax district, and village assessors in assessing taxable franchises of a railroad running through the village must enter the valuations of such franchises as so fixed, and, where such board has omitted to fix the value of each of such franchises in the village only, the assessors have no power to determine their value and enter the same in the assessment roll.

   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 376.*]

2. TAXATION (§ 496*) — ASSESSMENT WITHOUT JURISDICTION — REVIEW BY CERTIORARI.

   Where the assessment is made without jurisdiction, failure to file written objections as required by Tax Law (Laws 1896, p. 810, c. 908) § 36, does not affect the right of the person taxed to review the assessment by certiorari.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 892–893; Dec. Dig. § 496.*]

Certiorari by the People, on the relation of the New York Central & Hudson River Railroad Company, against Albert P. Keno and others. Review of assessment. Assessment stricken from rolls.

Lewis, Watkins & Titus, for relator.

J. E. Rafter, for respondents.

ROGERS, J. This is a certiorari to review the relator's assessment of its franchises in the village of Mohawk, Herkimer county.

The village was incorporated by chapter 157, p. 233, Laws 1844, and is in the town of German Flats. The village of Ilion is also in

said town. The relator's road runs through the town and the village. Both villages have taxable franchises as shown by the return. Whether any in the town, but outside the village, does not appear. On the 24th day of June, 1908, the assessors of the village of Mohawk made up their tentative assessment roll of the real and personal property assessable in said village, in the ordinary manner, deposited the same with one of their members for public inspection, posted the proper notice, and advertised in the official newspaper of the village the facts aforesaid, and that the assessors would meet at a place mentioned on the 8th day of July to hear complaints, if any, and to complete the roll. The town of German Flats is a tax district, but the said village of Mohawk is not. Tax Law (Laws 1896, p. 796, c. 908) § 2; People v. Gray, 185 N. Y. 196, 77 N. E. 1172. Under date of June 29, 1908, the state board of tax commissioners gave notice to the clerk of said town that the board "has fixed and determined the valuation of the special franchises of the West Shore Railroad Company * * * for the year 1908 in and for the town of German Flats at the sum of $51,400, which valuation is fixed and determined as the assessed valuation of such special franchise in such tax district for purpose of taxation"; and on the 3d of July the said town clerk made and delivered to the assessors of the village of Mohawk a copy thereof, said notice of assessment by the state board making no mention of the village of Mohawk, nor specifying any apportionment of said $51,400. Thereupon the assessors of said village proceeded to assess, according to the return, as follows:

"That our reason and information for the assessment of the special franchise assessment was the notice hereinbefore mentioned, served upon us by the town clerk of German Flats, which set forth that the state board of tax commissioners had fixed the value of the special franchise of the West Shore Railroad Company, in the town of German Flats, at the sum of $51,400. That the value of such special franchise was based upon a street crossing at Railroad street, Ilion, N. Y., a street crossing at Water street, Ilion, N. Y., a bridge crossing over Main street, Mohawk, N. Y., and a bridge crossing over Erie Canal, Mohawk, N. Y.; and it being within our knowledge and information that out of the five items upon which the special franchise for the said town was so fixed only two of such items were within the village of Mohawk, viz., the bridges named, and that, therefore, only part of such special franchise for said town was within the village of Mohawk, which village is a tax district within the town of German Flats, and a separate tax district from the village of Ilion, and therefore it became, and was necessary, and our duty, as prescribed by law, in such cases made and prescribed, to ascertain and determine what portion of said $51,400, the value of the town of German Flats' special franchise for said company as fixed by the said state board, should be placed upon the assessment roll for village purposes; and so we did thereupon duly ascertain and determine that the total valuation of the tangible and intangible worth or valuation of the special franchise in the said bridge crossings in Mohawk, N. Y., was fully worth the sum of $34,300," etc.

What valuation, if any, the state board put on the said franchises on account of the two bridges in Mohawk, or the said crossings in Ilion, does not appear. Having thus determined, the village assessors entered said sum in said assessment roll on the said 8th day of July.

The relator on the same day appeared and made oral objections to the assessment of said franchise assessment, and an agreement was

made with the representative of the relator that the time for completing said roll be adjourned until July 14th; but on said adjourned day no appearance was made by the relator, a further adjournment was had, and the roll was completed on the 15th day of said month, said franchise assessment remaining at the amount originally entered. The return is not traversed, and therefore must be assumed to be true, so far as it states relevant facts (People ex rel. Sims v. Fire Commissioners, 73 N. Y. 437), but not legal conclusions. Masterson v. Townshend, 123 N. Y. 458, 25 N. E. 928, 10 L. R. A. 816. Accordingly the statements that the village of Mohawk is a "tax district," that the assessors did "duly ascertain," or that "it became and was necessary and our duty, as prescribed by law, in such cases made and prescribed, to ascertain and determine what portion of said $51,-400, the value of the town of German Flats' special franchise for said company as fixed by the said state board, should be placed upon the assessment roll for village purposes," and the like, may be disregarded.

The assessment, except that it was limited to a sum not exceeding the $51,400 and not entered on the roll until grievance day, was made as they would assess a house within the village, themselves ascertaining and fixing the value.

My opinion is that the assessment in question was wholly unauthorized:

1. "The state board of tax commissioners shall annually fix and determine the valuation of each special franchise subject to assessment in each city, town, or tax district." Tax Law (Laws 1899, p. 1590, c. 712) § 42. The state board appoints a day, gives notice for hearing complaints (Id. § 45), and, when the valuation is fixed, the clerk of the board files with the clerk of the town, or city where such special franchise is assessed, a written statement of each special franchise as finally fixed and determined by said board. The town or city clerk then, in turn, certifies and transmits a copy of said statement to the assessors, or other local officers charged with the duty of making local assessments in each tax district in said city or town, and to the assessors of villages and commissioners of highways within their respective towns and villages. The valuations, as fixed by the state board, shall thereupon be entered by the assessors in the proper column of the assessment roll with the same force and effect as if originally made by such assessors; and, if a special assessment is wholly within a village, the valuation fixed by the state board for the town shall also be the valuation for the village, and, if a part only of such special franchise is in a village, it is the duty of the assessors to ascertain what portion of the valuation as fixed by the state board shall be placed on the tax roll for village purposes. Id. § 42. The two bridges, constituting the special franchise of the relator in the village of Mohawk, are apparently wholly within the village, hence there is no question of dividing both or either with the town; but the imperative command remains that it must be "as fixed by the state board." The terms "as fixed," "as so fixed," "has been fixed" by the state board, or equivalent words, may be found at least five

times in said section 42; but it nowhere appears, as I am able to discover after a careful reading, that the village assessors shall determine and fix the valuation of the special franchise.

I have not overlooked the fact that in section 42 the state board is required to make the assessment of the special franchise "in each city, town or tax district," making no mention of a village; but, turning to section 44, it will be seen that the state board is required to give notice to the party or parties assessed of the "total valuation of such special franchise, and the value thereof in each city, town, village or tax district." Again, returning to section 42, we find "the valuation so fixed by the state board shall be the assessed valuation on which all taxes based on such special franchise in the city, town, or village for state, municipal, school, or highway purposes shall be levied during the next ensuing year." It seems to me that, though the statute may not make a village one of the territorial units for a special franchise assessment by the state authorities, yet that each franchise (here, each bridge) in a village must be separately assessed by said state board.

I conclude, therefore, that the village assessors are without power to fix values in villages; that their duty is merely clerical—ministerial —to make such entry on the assessment roll as the state board shall fix for them; and that the assessment (i. e., ascertained value) of a special franchise, wholly within a village, can be made only by the state board. Any other construction of the tax law would lead to confusion and a possible conflict of judgment between the village assessors on the one hand, the town authorities on the other, and the state board on still another. "It is * * * a cardinal maxim of interpretation to so construe the words of a statute, if possible, as to uphold, rather than defeat, it; if susceptible of two hostile constructions, to give it that which will sustain and effectuate its object." Per Hubbard, J., Wynehamer v. People, 13 N. Y. 448. "If one construction would lead to an unreasonable result, it is to be avoided, if possible; for 'a bad result suggests a wrong conclusion.' If another construction would lead to a reasonable result in harmony with legislative custom and history, as well as with the general purpose of the statute, it is to be adopted if the language used will permit." Per Vann, J., People v. Fitzgerald, 180 N. Y. 275, 276, 73 N. E. 55, 56. "It is the duty of the court, when passing upon an act of the Legislature, to uphold and give effect to it if possible." Per Gray, J., People ex rel. Strough v. Canvassers, 143 N. Y. 84, 88, 37 N. E. 649, 650.

2. Concededly the village of Ilion is entitled to some of the benefit of the assessment of $51,400 laid upon the relator by the state board. Possibly the town of German Flats may also be entitled to a portion of the assessment. Whether it is does not appear. The assessors of the village of Mohawk have assumed to carve out as its share the sum of $34,300. Whether that is an equitable division we have no means of knowing, except from the return which is silent as to the amount that should be appropriated to the other village, or by the town, if any.

The question then arises:

"Shall the village of Mohawk make an apportionment for all of the beneficiaries within the town of German Flats without permitting the other or others to participate in the division?"

Evidently the answer must be in the negative; for, if otherwise, by the same statute the village of Ilion, taking "time by the forelock," could do precisely what the village of Mohawk assumed to do, and the latter would be obliged to acquiesce, right or wrong. The statute does not seem to make provision for a possible conflict of interest between a town and village, or between two villages in a town where the assessment, as here, has been made by the state board covering the entire town with the villages therein in a single lump sum. I think the state board in making the assessment, instead of placing it upon the whole town in bulk, ought to have fixed the value of each franchise, and, to have specified, or made clear, so that the assessors might know, the amount which should have been apportioned to each village for the purpose of local taxation, and that the assessors of the village of Mohawk are without power to make the apportionment.

3. The respondent's counsel contends that the charter of the village of Mohawk provides a method for reviewing an illegal assessment, and that the relator's remedy is under it rather than the general statute. Laws 1894, p. 215, c. 99, § 28. He overlooks the fact that the same statute provides that the charter provision shall not preclude the party from invoking any other method of relief.

4. He further contends that a certiorari to review the assessment does not lie, because the relator omitted to file a written objection, duly verified, on the day fixed by the village assessors for hearing complaints, as required by section 36 of the tax law (Laws 1896, p. 810, c. 908). This not being a case of overvaluation, but an assessment made without jurisdiction, the omission to file an objection in writing was not a waiver of a right to challenge the validity of the assessment. People ex rel. West S. R. R. v. Adams, 125 N. Y. 471, 484, 26 N. E. 746; People ex rel. N. Y. Edison Co. v. Feitner, 39 Misc. Rep. 474, 80 N. Y. Supp. 138.

The assessment in question may be stricken from the roll, but without costs.

Ordered accordingly.