regard that agreement, and seek in the usual way to compel the payment of alimony and counsel fee. She does not ask for payment of the sums provided in the agreement for her support, but for such amount as is reasonable.

Passing now to the question of the amount of the allowance, it is shown to my satisfaction that the circumstances of the defendant have changed very decidedly for the worse since the separation agreement was made in April, 1907. At that time he was the owner of a large number of pieces of real estate, which were, however, heavily mortgaged. During the period of depression that has intervened since the date of the agreement the mortgages on some of these properties have been foreclosed, and deficiency judgments in large amounts have been taken against him. Other parcels he has conveyed away, claiming to have made the best terms possible for himself. On behalf of the wife it is insisted that he still has valuable equities in such pieces of property, but I am by no means satisfied by the papers before me that such is the fact; or, at any rate, that such equities, if they exist, are of any immediate financial value. At the present time the defendant is doubtless in sore financial straits, and I believe has been doing the best he could for his family. He has been paying $20 per week for the support of his wife and three of the children. Of the four children mentioned in the separation agreement one, a son, is now self-supporting, earning $7 a week. The other three are being boarded at the rate of $4 a week with one or the other of the married daughters of the parties. This leaves $8 per week for the plaintiff's use.

Upon the facts, so far as I can gather them from the present papers, this seems all that the defendant should be required to pay until his financial condition improves. An allowance of $75 for counsel fee will also be made, payable in such installments as may be provided in the order, which may be presented on the usual notice of settlement.

---

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. GOURLEY et al.

(Supreme Court, Special Term, Rockland County. October 2, 1909.)

1. TAXATION (§ 376*) — ASSESSMENT OF FRANCHISES — "EACH SPECIAL FRANCHISE."

Within Tax Law (Laws 1896, p. 795, c. 908, as amended by Laws 1904, p. 977, c. 382) § 42, now Consol. Laws, c. 60, § 43, requiring the state board of tax commissioners to annually fix and determine the valuation of "each special franchise," subject to assessment in each city, town, or tax district, each highway crossing of a railroad company in a town in which it has only one line of railroad is not a special franchise to be separately valued, but all its special privileges therein, constituting parts of and operated as one system, constitute its special franchise; "each special franchise" referring to the special franchises of different corporations.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 625; Dec. Dig. § 376.*]

2. TAXATION (§ 376*)—FRANCHISES—APPORTIONMENT BY VILLAGE ASSESSORS.

Under Tax Law (Laws 1896, p. 795, c. 908, as amended by Laws 1904, p. 977, c. 382) § 42, now Consol. Laws, c. 60, § 43, providing that the state board of tax commissioners shall annually fix and determine the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

valuation of each special franchise, subject to assessment in each city, town, or tax district, and that, if a special franchise assessed in a town is. wholly within a village, the valuation fixed by the state board for the town shall be the valuation for the village, but, if a part only of it is in a village, the village assessors shall determine what portion of the valuation so fixed shall be placed on the tax roll for village purposes, where the special franchise of a railroad company in a town consists of highway crossings, some of them wholly in one village and the others wholly in another village, the village assessors are to apportion the valuation as they would if the franchise consisted of a single crossing partly in one village and partly in the other.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 625; Dec. Dig. § 376.*]

Certiorari by the People, on the relation of the New York Central & Hudson River Railroad Company, against James Gourley and others, assessors of the village of Haverstraw, Rockland County, and Henry F. Dorl, clerk of said village. Writ dismissed.

Alexander S. Lyman, for relator.
Alonzo Wheeler, for respondents.

TOMPKINS, J.  This is a proceeding by writ of certiorari to strike from the assessment roll of the village of Haverstraw a special franchise assessment of $16,800, against the relator.  There are two incorporated villages in the town of Haverstraw, to wit, the village of Haverstraw and the village of West Haverstraw, and it appears that on the 29th day of June, 1908, the state board of tax commissioners sent to the town clerk of the town of Haverstraw a notice which stated that the state board had fixed the valuation of the special franchise of the West Shore Railroad Company "in and for the town of Haverstraw, village of Haverstraw, track crossing Gurnee avenue, Long Clove, Short Clove, Fairmont avenue, New Main street, West Side and Railroad avenues, village of West Haverstraw across Maple avenue and White road, in the county of Rockland, at the sum of twenty-five thousand, four hundred dollars, which valuation is fixed and determined as the assessed valuation of such special franchise in such tax district for the purposes of taxation." Thereupon a copy of said notice was certified by the town clerk of the town of Haverstraw to the village assessors of the said village of Haverstraw and West Haverstraw, and thereafter the assessors of the village of Haverstraw ascertained and fixed the sum of $16,800 as the valuation of that portion of the relator's special franchise situated in the village of Haverstraw, and placed it upon the village assessment roll, and from the return of the respondents it appears that at about the same time the assessors of the village of West Haverstraw fixed the value of that part of the relator's railroad franchise within the said village of West Haverstraw at the sum of $7,250, and this application to strike the said special franchise assessment from the village assessment or tax roll of the village of Haverstraw is based upon the claim made by the relator that the assessment was fixed by the local village assessors, and not by the state board of tax commissioners, and that the said local assessors were without jurisdiction to make such assessment,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

and that each of the relator's highway crossings in the said town of Haverstraw should have been separately valued by the state board of tax commissioners, and that the only duty of the village assessors was to adopt the valuations fixed by the state board upon the seven separate highway crossings within the village of Haverstraw. In other words, the claim is made by the relator that each highway crossing, bridge, culvert, or other railroad structure that crosses at grade or above or below a public highway is a special franchise within the meaning of the statute, and that a separate valuation should have been fixed upon each by the state board of tax commissioners.

I am not persuaded that the term "each special franchise" in the tax law (Consol. Laws, c. 60, § 43) means each bridge or crossing of a railroad in a tax district, but, on the contrary, it seems to me that the term refers to the several franchises of the different corporations who enjoy special privileges granted by the public for the maintenance and operation of railroads, telephone, telegraph, electric light, gas, water supply, and other public utilities, and that a "special franchise" in a town which is one of the tax districts created by the statute, and the one with which we have to deal in this case, includes all of the rights and privileges that one corporation may possess and operate as one or as part of one system in a town. In this case the relator owns and operates one line of railroad through the town of Haverstraw, which crosses the public highway at nine different points in said town, seven of which crossings are altogether in the village of Haverstraw, and two of which are in the village of West Haverstraw; both villages and all of said nine crossings being wholly within the town of Haverstraw. The state board of tax commissioners fixed the value of the relator's said special franchise at the sum of $25,400, whereupon the assessors of the village of Haverstraw determined that the portion of such valuation to be placed on the village tax roll was $16,800, and the return made by the respondents shows that the amount of said special franchise valuation fixed by the assessors of the village of West Haverstraw was $7,250; so that here we have a total valuation in the two villages less than the valuation on the whole franchise in the town, as fixed by the state board of tax commissioners, and it is one of the grounds urged by the relator in support of its claim that, if the village assessors may accomplish that result, they may also, where there are two or more villages in one town, fix separate valuations that will in the aggregate exceed the valuation fixed by the state board. And that seems to be possible with the tax law in its present form, but the same possibility may be said to exist where a single crossing or bridge wholly within one town is partly in one village and partly in another village. In such a case it is very clear from the language of section 43 of the tax law (Consol. Laws, c. 60) that the village assessors are charged with the duty of ascertaining and determining what portion of the valuation shall be placed on the village tax roll, and that is conceded by relator's counsel; so that in either event there is the possibility of confusion, and an aggregate valuation in excess of the amount fixed by the state board of tax commissioners.

I think the purpose of the Legislature in creating the town as a tax district was to provide for one assessment or valuation by the state

board of tax commissioners of all special privileges in a town enjoyed by a single corporation, and constituting parts of, and operated as, one system, and that, where a part of such a franchise is in a village, the assessors of the village must judicially determine what portion of the whole valuation fairly and reasonably represents the portion of such franchise within the village limits. Otherwise it would be impossible for village authorities to perform their duties under the provisions of the tax law unless it was the intention of the Legislature to require the said assessors to fix a separate value upon each bridge, culvert, grade crossing, etc., which I do not believe was the purpose of the lawmakers. It might just as well be said that the value of each telephone or electric light pole must be separately fixed, because, perchance, one may be larger or may carry more cross-arms or wires than another. The town is the tax district, and not any subdivision thereof.

This section 43 of the tax law, respecting the assessment of special franchise in villages, is somewhat ambiguous, and has been given another construction than the one I give it. People ex rel. N. Y. Central & Hudson River Railroad Company v. Keno, 61 Misc. Rep. 345, 114 N. Y. Supp. 1094, in which case this court at Special Term in Onondaga county evidently overlooked the fact that the word "village" which was originally in section 44 (added to Laws 1896, p. 795, c. 908, by Laws 1899, p. 1591, c. 712, § 2) had been stricken therefrom by chapter 458, p. 1078, Laws 1906, and that now section 45 of the tax law (Consol. Laws, c. 60), which was section 44 of the old law, only requires notice of the making of the assessments and the amounts thereof in each "city, town, or tax district," omitting the word "village." The fact that the statute is ambiguous and somewhat inconsistent in its provisions respecting the fixing and apportionment of the special franchise valuation requires that it shall be so construed as to give effect to the evident intention of the Legislature, and it can hardly be that it was ever intended that the value of every separate bridge, culvert, or crossing in a single tax district should be separately ascertained and fixed, and, even if that were the meaning and purpose of the statute, there would still be confusion and possible conflict between two villages respecting a single structure that was partly in one village and partly in another, with the same danger of the aggregate valuations of the two villages exceeding the valuation fixed by the state board of tax commissioners that exists with the method pursued by the village assessors in this case.

It seems to me that the conclusions I have reached, namely, that all of the special privileges enjoyed by a corporation within a tax district —i. e., a town, and constituting parts of a single system—shall be regarded as a "special franchise," upon which a valuation shall be fixed by the state board of tax commissioners, and that, where parts of such special franchise are in two or more villages all within the same town, the assessors of such villages shall ascertain and determine what is a fair and just portion of such total valuation, to be placed upon the village tax roll, are more in harmony with the purpose of the statute than the claim of the relator, that each highway crossing or other special privilege should have a separate valuation fixed upon it by the state board of tax commissioners. While it is true that section

43 (old section 42) of the tax law provides that the state board of tax commissioners shall "fix and determine" the valuation of each special franchise, and that the valuation of every special franchise "as so fixed" by the state board shall be entered by the assessors or other officers in the proper column of the assessment roll, etc., and again provides that "the valuation so fixed by the state board shall be the assessed valuation on which all taxes based on such special franchise in said town or village for state, municipal, school or highway purposes, shall be levied during the next ensuing year," and while it would seem, at first thought, that only such valuations "as fixed" by the state board are to be used for assessment purposes, yet there is an exception made in the statute in a case where "a part only of such special franchise is in a village or is in a village situated in more than one tax district," in which case it shall be the duty of the village assessors to ascertain what portion of the valuation of such franchise as the same has been fixed by the state board shall be placed upon the tax roll for village purposes. So that the whole question resolves itself into this: What is it that shall be apportioned by the village assessors? Is it the valuation put by the state board upon a single bridge or crossing that may be partly in one village and partly in another? Or is it the valuation that the state board has placed upon all of the crossings and bridges of a single system in a town in which two or more villages are located as one "special franchise" that the assessors of the two or more villages are to divide and apportion among themselves? It seems to me that the latter is the more reasonable, and if the village assessors make an unequal or unjust apportionment, or in the aggregate exceed the total valuation fixed by the state board, their action should be subject to review by writ of certiorari.

Writ dismissed, with costs.