handed the money to the respondent, as his agent, to pay the debt to the creditor, and this established a good cause of action (Weston v. Brown, 158 N. Y. 360, 53 N. E. 36; Denny v. Lincoln, 5 Mass. 385), which it was error to dismiss. This conclusion is not in conflict with the opinion of this court on a previous appeal in this case. 113 N. Y. Supp. 95. There the question was the insufficiency of proof of ownership of the money; here the testimony on that point is complete.

Judgment and order reversed, and a new trial ordered, with costs to appellant to abide the event.

GIEGERICH, J., concurs.

LEHMAN, J. (concurring). At the time that the deposit was made the plaintiff and the defendant were living together, and it was an essential part of the agreement that they should thereafter separate. In such a case the contract is void. Poillon v. Poillon, 49 App. Div. 341, 63 N. Y. Supp. 301; Winter v. Winter, 191 N. Y. 462, at 470, 84 N. E. 382, 16 L. R. A. (N. S.) 710. Moreover, the acts of the parties must be given some reasonable intendment, and, if the money actually belonged to the plaintiff, then the refusal of her husband to pay it to her till after he had obtained a divorce would show an intention on his part to procure her consent to a divorce, and the courts should refuse to enforce a condition imposed evidently only for such a purpose. The defendant herein had no interest in the fund deposited with him. He is merely the depository. If in fact the money belongs to the plaintiff, and is held by him under an illegal contract, or under a condition void because of its uncertainty, he should pay it over to the owner. Under such circumstances the depositor may bring an action for money had and received. O'Maley v. Reese, 6 Barb. 658. The plaintiff has made out a prima facie case of ownership, and the court should not have dismissed the complaint, since the defendant has no right to hold the money.

I concur in the result for this reason.

---

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. GOURLEY et al.

(Supreme Court, Appellate Division, Second Department.   December 30, 1909.)

TAXATION (§ 284*)—FRANCHISES—APPORTIONMENT BY VILLAGE ASSESSORS.

Tax Law (Laws 1896, p. 796, c. 908) § 2, subds. 3, 4, defining a "special franchise" as related to a railroad, makes it in effect the conferred right to occupy the public ways and places of a municipality for the construction and operation of a railway, and, for the purposes of taxing such franchise, adds the value of the structures to the value of the right. Subdivision 4 exempts certain rights, such as certain street crossings outside city limits, from assessment. Section 42, added to Laws 1896, p. 795, c. 908, by Laws 1899, p. 1590, c. 712, § 2, and amended by Laws 1904, p. 975, c. 382, § 1, provides that the State Board of Tax Commissioners shall annually fix the valuation of each special franchise subject to assessment in each city, town, or tax district, and if a special franchise assessed in a town is wholly within a village, the valuation fixed for the town shall be the valuation for the village, and if part only is in the village, the vil-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lage assessors shall determine what part of the valuation so fixed, shall be taxed for village purposes. *Held* that, where a railroad company owned nine special franchises assessed at a gross valuation by the State Board of Tax Commissioners, seven of which were wholly in one village and two in another, the village assessors had no authority to apportion between them the gross valuation of the franchises as fixed by the board.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 461; Dec. Dig. § 284.*]

Appeal from Special Term, Rockland County.

Certiorari by the People, on the relation of the New York Central & Hudson River Railroad Company against James Gourley and others, Assessors of the Village of Haverstraw, and another, to strike from the assessment roll of the village a special franchise assessment against relator. From an order of the Special Term (64 Misc. Rep. 605, 118 N. Y. Supp. 776) dismissing the writ, relator appeals. Reversed and remanded, with directions.

Argued before JENKS, THOMAS, RICH, and MILLER, JJ.

George H. Walker, for appellant.

Alonzo Wheeler, for respondents.

THOMAS, J. The tax law provides for valuation of special franchises by the State Board of Tax Commissioners, the transmission of notice thereof to the clerk of the city, town, or tax district, and that such clerk shall pass the valuation on to the local assessors of tax districts, villages, and the commissioners of highways. No difficulty arises if the entire special franchise is in one district, and, if there be a village, if it be entirely within the village. If only part of it be within a village, the village assessors ascertain what portion of the valuation shall be used for village purposes (section 42, added to Laws 1896, p. 795, c. 908, by Laws 1899, p. 1590, c. 712, § 2, and amended by Laws 1904, p. 975, c. 382, § 1). There is no recognition of conflicting interests and no provision therefor. In the present case the West Shore Railroad runs through the town of Haverstraw, and owns nine special franchises, separately enumerated by the State Board, and valued at the gross sum of $25,400. Seven of these franchises are entirely within the village of Haverstraw, and two are entirely within the village of West Haverstraw. The assessors of the village of Haverstraw have placed upon their tax roll $16,800 of the valuation, while the assessors of the other villages have placed upon their assessment roll $7,250 of the valuation, leaving $1,350 of the entire valuation not appropriated by either village.

The relator contends correctly that these several boards of local assessors had no power to split up the gross valuation and appropriate portions thereof. Mr. Justice Rogers, in People ex rel. N. Y. C. & H. R. R. Co. v. Keno, 61 Misc. Rep. 345, 114 N. Y. Supp. 1094 decided the question now presented favorably to the relator. Without repeating the considerations that moved the learned justice in that case, I think that a simple discussion of the nature of special franchises as revealed by the statute will aid that conclusion. A special franchise, as related to the railway in question, is defined by the stat-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ute (Tax Law [Laws 1896, p. 796, c. 908] § 2, subds. 3, 4, as amended by Laws 1908, p. 789, c. 295), and in brief is the conferred right to occupy the public ways and places of a municipality for the construction and operation of a railway, and to the value of the right the value of the occupying structures is added for the purposes of taxation. The premises to be valued ard in severalty, and presumably unequal, as the places and ways are diversified, and structures occupying the same are or may be unequal in nature, dimensions, cost, and consequent value. Therefore it would be necessary for the State Board to appraise separately the value of each special franchise and the tangible property connected therewith. Indeed, certain rights and occupations, by subdivision 4 of section 2, are exempt from assessment, showing that the items of valuation had distinct identity. The State Board appreciated this by stating nine separate items, but aggregated the value of the same at $25,400, located as above stated. No difficulty would arise from uniting the assessments in one sum, if all the items were in one town, city, tax district, or village; nor would there be difficulty if, in the present case, all were partly within the village of Haverstraw and partly within the town of Haverstraw. Section 42 in that case would give the assessors of the village the power to determine what portion of the valuation should be placed upon the tax roll for village purposes, and there would be no conflict of jurisdiction and no opportunity for duplicate appropriation of the valuation. If part of one special franchise were in one village and part in the other, according to the respondents' contention two boards of assessors would have coequal and concurring power to distribute the valuation, and the statute does not in such case endow the local assessors with power to act. But in the present case the situation is that there is no sharing by the two villages in a special franchise, for one village contains all of two franchises and one contains all of seven franchises, and all nine are unified in a single valuation by the State Board. What valuation the State Board placed upon each of these nine franchises does not appear. The statute does not enable the village assessors of either or both villages to apportion this gross valuation, nor are there data— that is, valuations of items—upon which the local officers could intelligently and justly make distribution. In fact, the local assessors are not permitted to have any knowledge of the subject. To allow the assessors of the several villages to apportion the gross valuation would be to allow them to ascertain and fix the valuation of the items in the two villages and state the ratio of each to the gross valuation made by the State Board. The statute provides no machinery for this, and such undertaking would be quite beyond the very limited powers intended to be conferred upon the local assessors.

The order dismissing the writ should be reversed, and the matter remitted to the Special Term for disposition, pursuant to the present direction, with costs, and with costs of this appeal. All concur.