The People ex rel. The West Shore Railroad Company, Appellant, *v.* Victor Adams et al., Trustees, etc., Respondents.

Same, Appellant, *v.* Warren Edick et al., Trustees, etc., Respondents.

*It seems*, the act of 1867, "in relation to the valuation of property of railroad companies in school districts, for the purpose of taxation" (Chap. 694, Laws of 1867), has no relation to general taxation for town purposes; it does not contemplate that the apportionment between the school districts therein provided for shall be indicated on the town assessment-roll, but by a certificate of the assessors, to be prepared and filed in the town clerk's office after the roll is completed.

Under the provisions of the charter of the village of Little Falls (§ 39, chap. 158, Laws of 1873) in relation to taxation for village purposes, the valuation of property in the assessment-rolls of the towns, "parts of which comprise the territory of said village," is made the general rule of valuation for village taxes; the trustees of the village, as its board of assessment, are required to adopt it, "as far as practicable," unless the valuation has changed by reason of the circumstances mentioned in said provision. The power given to the board to "reduce or add to the valuation" is confined to the exceptional cases specified in the provision.

While, however, neither said act of 1867, nor the general statutes require town assessors to assess the real property of a railroad corporation separately, according to the particular district or locality in the town where it may be located, the fact that the assessors of the town in which said railroad is located in making up their assessment-roll apportioned the valuation of such property among the school districts of the town by way of discharging the duty imposed upon them by said act, does not invalidate the assessments, nor may the valuation be disregarded by the board of assessment of the village.

Where, therefore, in proceedings by certiorari under the act of 1880 (Chap. 269, Laws of 1880), to review certain village assessments upon real estate of a railroad company, a portion of which is located in each of

the towns in which the village lies, it appeared that the said board entirely disregarded the valuation upon the assessment-roll of one of the towns, in which that portion of the property lying in said village was valued separately, as in a school district, and where it was not claimed that the valuation had changed by reason of circumstances specified in said provision of the charter. *Held,* that the assessment was erroneous.

Also *held,* that the error was not cured because of the fact that in the valuation, in the assessment-roll of the other town, of that portion of the relator's property lying therein, the valuation of that part of it lying within the limits of the village was not separately stated, thus rendering it necessary for the board to make an original valuation of that part; that they were bound to follow the town valuation as far as practicable.

It appeared that in the case of one of the assessments complained of, the relator did not appear before the board on "grievance day," and object to the assessment, but relied upon unofficial information that the assessment would be the same as the year preceding. *Held,* that by its *laches* it had lost its right to avail itself of the remedy given by the act of 1880; that as the board had jurisdiction to assess, but adopted an erroneous principle of valuation, the case was rather one of over assessment than of a void assessment.

As to another assessment, no notice was published as to the final completion of the roll. *Held,* that the limitation of time prescribed by the act of 1880 (§ 9), within which a party aggrieved might sue out a writ of certiorari did not apply.

Also *held,* the fact that the assessment-rolls sought to be corrected were not in the possession of the village trustees when the writs were issued, was not material.

(Argued January 13, 1891; decided February 24, 1891.)

Appeals from orders of the General Term of the Supreme Court in the fifth judicial department, made April 29, 1890, which reversed orders of the Special Terms in certiorari proceedings taken under chapter 269 of the Laws of 1880, to review assessments of the relator's property in the village of Little Falls, made by the village trustees in the years 1886 and 1887.

The orders of the Special Term reduced the assessment of 1886, from $40,000 to $18,661, and the assessment of 1887, from $40,000 to $19,200.

The village of Little Falls includes territory in both the town of Little Falls and the town of Danube, across which the track of the relator, the West Shore railroad, is laid upon

land owned by the company, and its track is continued also through the territory of the two towns outside of the village. The real estate of the company in said village in 1886 and 1887, at the time of the assessments in question, consisted of about nineteen acres of land, and upon that part within the town of Little Falls, in addition to the tracks of the company, were a station-house, freight-house and three dwelling-houses. In 1885 the assessors of the town of Little Falls assessed the property of the relator in the town (including as well the property within the village of Little Falls as that outside of it), at the sum in the aggregate of $40,000, the entry on the assessment-roll being, "New York, West Shore and Buffalo Railway Company, forty-five and fifty-seven-one-hundredths acres of land; district No. 1, $15,000; district No. 5, $12,500; district No. 8, $12,500; total amount of real estate, $45,000." The assessment of the town in 1886 was in substantially the same form. In 1885, the assessors of the town of Danube assessed the property of the relator in that town (including its property in that town lying within the village of Little Falls), at the aggregate sum of $60,000, and filed in the town clerk's office a certificate of apportionment, apportioning the valuation among the school districts in the town, and the apportionment to school district No. 1 was $3,661. The assessment of the relator's property in the town of Danube in 1886, on the town assessment-roll was $60,650. The assessment-roll also contained the following entry: "West Shore railroad apportionments of the several school districts in the town of Danube: district No. 1 is apportioned $19,600; district No. 3 is apportioned $16,000; district No. 5 is apportioned $25,850; Little Falls district No. 1 is apportioned $4,200."

Little Falls school district No. 1 is wholly within the village of Little Falls, and embraces all the territory of the towns of Little Falls and Danube included in the village, and all the property of the relator liable to taxation for village purposes is situated within said district. In 1885, the village assessors assessed the property of the relator in the village at $20,000.

In 1886, the clerk of the village, preparatory to making the village assessment of that year, copied the assessment-roll of the town of Little Falls of the previous year (1885), and in respect to the relator's property incorporated the assessment as it stood on the town roll, viz.: as consisting of forty-five and forty-seven-one-hundredths acres of land of the valuation of $40,000, but omitting the valuation apportioned therein to school district No. 1 of $12,500. The land of the relator in the whole town of Little Falls consisted of forty-five and forty-seven-one-hundredths acres, of which only about fourteen acres were within the village. The village assessors, however, adopted the assessment as copied from the town roll, and the village tax of 1886 against the relator purported to be on forty-five and forty-seven-one-hundredths acres of land at the valuation of $40,000.

The village tax of 1887 was made in substantially the same way.

The village clerk, in making a copy of the assessment-roll of the town of Danube in 1886 and 1887, seems to have wholly disregarded the assessment of the relator's property on that town roll, and the village assessments in these years do not appear to have been based on any specific valuation of the relator's property therein. It consisted of about five acres of land and was, as may be inferred, of comparatively little value. There had been no change in the property of the relator subject to village taxation, and no increase in value from the time of the assessment, made by the towns of Little Falls and Danube respectively in 1885, up to the making of the village assessments in 1886 and 1887. In each of the years 1886 and 1887, the trustees of the village caused notice to be published that the assessment-roll as copied by the clerk, and amended and changed by the trustees, would be left for inspection at a place named, and that the trustees would meet to hear objections, etc., but no notice was given at any time of the final completion of the roll.

The relator did not appear on grievance day in 1886, to object to the assessment, because as was claimed it had been

informed that the valuation of its property would be the same as in 1885, but it did appear in 1887, and objected to the assessment of that year. The roll in neither year was verified. The relator on March 25, 1887, applied for a certiorari to review the assessment of 1886. The assessment-roll of that year was then in the hands of the collector of the village, but he returned it to the village clerk March 29, 1887, before the return to the certiorari was made. Similar proceedings were taken by the relator October 11, 1887, to review the assessment of that year, the assessment-roll being then in the hands of the collector. He made return on his warrant January 3, 1888, prior to the decision of the Special Term. The relator had paid its tax in each year prior to the application for the certiorari. The reduction made by the Special Term was made to conform the assessments in each of the years 1886 and 1887, to the apportionments made by the town assessors of the towns of Little Falls and Danube in the year preceding the village assessments of the valuation of the relator's property, to school district No. 1.

Other facts appear in the opinion.

*Hamilton Harris* for appellant. The provisions of chapter 269 of the Laws of 1880, providing a new and complete system for reviewing and correcting errors of assessors on certiorari, clothed the court with ample authority to correct the errors of the assessors of the village of Little Falls complained of, and justified the relief granted by the Special Term. (*People ex rel.* v. *Becker*, 26 N. Y. S. R. 36 ; Laws of 1858, chap. 49, § 39 ; Laws of 1873, chap. 158 ; *Merritt* v. *Village of Portchester*, 71 N. Y. 311 ; Laws of 1885, chap. 201 ; Laws of 1884, chap. 414, § 1.) In making this appointment the town assessors acted judicially, and as no changes were made in the property of the relator it was the duty of the village trustees to adopt the valuation of the property of the relator apportioned and determined by the town assessors to be $18,661 for the year 1886, and $19,200 for the year 1887. (*Merritt* v. *Village of Portchester*, 71 N. Y. 311.)

The trustees had no power to make an original assessment and valuation without properly verifying the assessment-rolls. (Laws of 1884, chap. 308, § 1; *Van Rensselaer* v. *Witbeck,* 7 N. Y. 517.; *Parish* v. *Golden,* 35 id. 463; *Westfall* v. *Preston,* 49 id. 349; *Bellinger* v. *Gray,* 51 id. 610; *People ex rel.* v. *Suffern,* 68 id. 322; *Brevoort* v. *City of Brooklyn,* 89 id. 128; *Shattuck* v. *Bascom,* 105 id. 39; *Bowns* v. *May,* 120 id. 361.) The orders made by the Special Term properly reduced the assessment from $40,000 to $18,661 for 1886, and from $40,000 to $19,200 for 1887. (*People ex rel.* v. *Parker,* 117 N. Y. 91.) There is satisfactory evidence as to the real value of the relator's property, especially as there was no evidence produced by the defendants contradicting the evidence of the town assesors. The evidence of the town assessors is competent. (*People ex rel.* v. *Coleman,* 115 N. Y. 17.) The power of the court is ample to reduce an erroneous or unequal assessment, or make a new assessment. (Laws of 1880, chap. 269, §§ 4, 5, 8; *People ex rel.* v. *Weaver,* 34 Hun, 321; *People ex rel.* v. *Keator,* 36 id. 592; *People ex rel.* v. *Carter,* 52 id. 459; *People ex rel.* v. *Parker,* 117 N. Y. 91.) The relator was properly awarded costs by the Special Term against the defendants in the order correcting the assessment for 1887. (*People ex rel.* v. *Weaver,* 34 Hun, 321.)

*Myron G. Bronner* for respondents. The trustees were right in assuming the power to and in fixing the valuation of the property of the relator. (*White* v. *Smith,* 46 N. Y. 418; *Dunham* v. *Cudlipp,* 94 id. 134; Code Civ. Pro. § 522; *Cook* v. *Barr,* 44 N. Y. 158.) It was competent for the trustees in fixing the relator's valuation to examine its property personally, and compare it with other properties, and their act determining the valuation at $40,000 being within their jurisdiction, was conclusive on all concerned until reversed by a tribunal of competent jurisdiction. (*A. & W. S. R. R. Co.* v. *Canaan,* 16 Barb. 244; *People ex rel.* v. *Village of Ogdensburg,* 48 N. Y. 390.) One of the rules for determining the value of railroad property is by its earning

capacity. (*People ex rel.* v. *Keator*, 36 Hun, 595; *People ex rel.* v. *Pond*, 13 Abb. [N. C.] 1; 92 N. Y. 643; *People ex rel.* v. *Weaver*, 34 Hun, 322.) The relator's claim that the defendants did not maintain the same valuation per mile through the village as that at which its road was assessed outside and in the adjoining towns of Little Falls and Danube is not reviewable here. (*People ex rel.* v. *Haupt*, 104 N. Y. 377; *People ex rel.* v. *Davenport*, 91 id. 85.) There were 1,412 different pieces of property appearing on the assessment-roll of the village for 1886, and if this were an original and not a copied assessment, the difference in opinion between the assessors and witnesses as to the value of four pieces of property out of 1,412 would not be sufficient grounds on which to order a reassessment of relator's property, except that there was some direct evidence that the relator had been injuriously affected by such difference. (*People ex rel.* v. *Carter*, 109 N. Y. 576; 47 Hun, 447; 46 id. 444; *People ex rel.* v. *Christy*, 115 N. Y. 162; *People* v. *Frost*, 10 N. Y. S. R. 878.) The attachment of the usual assessors' oath to the assessment-roll when completed was not necessary, as the statute pointed out another method of authenticating and verifying the village assessment-roll. (Laws of 1858, chap. 49, § 41.) The attention of the trustees never having been called to mistaken descriptions before the roll was completed, it was not corrected by the trustees. At most it was an irregularity and did not render the assessment void. (*A. & W. S. R. R. Co.* v. *Canaan*, 16 Barb. 244; *People* v. *Terney*, 32 N. Y. S. R. 605.) The General Term could have reversed the order reducing relator's assessment made by the Special Term. (*People ex. rel.* v. *Reddy*, 43 Barb. 539; *People ex rel.* v. *Burhans*, 25 Hun, 186; *People ex rel.* v. *Assessors*, 16 id. 407; Code Civ. Pro. § 2129; *People ex rel.* v. *Suprs.*, 40 Hun, 231; *People ex rel.* v. *Common Council*, 38 id. 7.) The act of 1880, giving a remedy by certiorari to review or correct an illegal or excessive assessment, does not permit a party complaining of an assessment, who has omitted to avail himself of the opportunity provided by statute to remedy his grievance, after the assess-

ment has been confirmed by lapse of time, to arrest a collection of tax by a proceeding under this act. (*Boyd* v. *Gray*, 34 How. Pr. 323; *G. V. N. Bank* v. *Bd. Suprs.*, 33 Barb. 223; *Bank* v. *Mayor, etc.*, 43 N. Y. 184; *People* v. *Osterhoudt*, 24 Wkly. Dig. 101; *People* v. *Dolan*, 32 N. Y. S. R. 599.) It was error for the referee to rule that he had no power to pass on questions of evidence. (*McCurry* v. *Hooper*, 12 Ala. 823; *People* v. *Christie*, 115 N. Y. 158.) The declarations and admissions of officers and agents of a corporation may be proved against the corporation as a part of the *res gestæ* only when made during the agency and in regard to a transaction pending at the very time, so as to constitute a part of the act. (1 Greenl. on Ev. § 113; *Luby* v. *H. R. R. R. Co.*, 17 N. Y. 131; *Johnson* v. *Thompson*, 23 Hun, 90; *Anderson* v. *R., W. & O. R. R. Co.*, 54 N. Y. 334; *Dean* v. *Æ. L. Ins. Co.*, 62 id. 642; *F. N. Bank* v. *O. N. Bank*, 60 id. 278; *Loper* v. *B., etc., R. R. Co.*, 19 Barb. 310; *Furst* v. *S. A. R. R. Co.*, 72 N. Y. 542; *Hydorn* v. *Cushman*, 16 Hun, 107; *Winne* v. *N. F. Ins. Co.*, 9 Wkly. Dig. 567; *Dowling* v. *M. E. C.*, 12 id. 394; *White* v. *Miller*, 71 N. Y. 119; *Marvin* v. *Wilber*, 52 id. 270; *Bell* v. *Harrison*, 60 id. 627; *Scott* v. *Stevenson*, 3 Hun, 352.)

ANDREWS, J. The defendants are undoubtedly right in their contention that the act, chapter 694 of the Laws of 1867, was intended to regulate valuation in towns of property of railroad corporations for purposes of school district taxation only, and that the statute does not contemplate that the apportionment therein provided to be made, should be indicated on the town assessment-roll, but by a certificate of the assessors to be prepared and filed in the town clerk's office after the roll is completed.

This will plainly appear by a brief reference to the statutory system of taxation for school purposes, as supplemented by the act of 1867.

The statute (Chap. 555, Laws of 1864, §§ 15, 65), provides for the assessment, in each school district of the state, of taxes

for certain school purposes, upon their being voted at a district meeting, and when authorized they are to be assessed upon all the real and personal estate in such district, including the property of corporations liable to taxation therein.

By section 67 of that act, the valuation of property for the purposes of school distict taxation is to be ascertained, as far as possible, from the last assessment-roll of the town. By chapter 694 of the Laws of 1867, entitled " An act in relation to the valuation of the property of railroad companies in school districts for the purpose of taxation," it is made the duty of the town assessors, within fifteen days after the completion of their annual assessment-list, to apportion the valuation of the property of every railroad company appearing on such list " among the several school districts in their town, in which any portion of said property is situated, giving to each of said districts their proper portion according to the proportion that the value of said property in each of such districts bears to the value of the whole thereof in said town." (§ 1.)

The second section of the act declares that the apportionment shall be in writing, signed by the assessors, or a majority of them, and shall set forth the number of each district and the valuation apportioned to each, and that it should be filed in the office of the town clerk by the assessors within five days after being made, and the section concludes by declaring that " the amount so apportioned to each district shall be the valuation of the property of each of said companies, on which all taxes against said companies in and for said districts shall be levied and assessed, until the next annual assessment and apportionment."

The third section authorizes the supervisor of the town to make the apportionment on the application of the trustees, or board of education of any district, or of any railroad company, if the assessors shall neglect to make the same.

This act was extended by chapter 414 of the Laws of 1884, so as to embrace the property of telephone, telegraph and pipe-line companies. The sole object of this act, as is manifest from its title and provisions, was to prescribe the basis for tax-

ing the property of railroad companies for school district pur-
poses, and how the valuation should be ascertained as between
school districts, where the company has property situated in
several school districts within the town.    It has no relation·to
general taxation for town purposes.    But it made the valuation
of the last town assessment-roll the valuation for school district
taxation, and where the property was situated in several school
districts each was to be apportioned by the assessor out of the
aggregate valuation, its proper share to be specified in the
certificate of apportionment.    The statute does not make
the certificate a part of the town roll.    It contemplates a sepa-
rate and distinct paper to be made and filed after the roll is
completed.

The scheme of taxation in the village of Little Falls for
village purposes is prescribed in the village charter.    The
charter (Chap. 158, Laws of 1873, § 39) declares as follows:
" The trustees shall constitute the board of assessment of the
village for the purpose of valuation and taxation ; the trustees
shall cause to be copied, from the last assessment-roll of the
several towns, parts of which comprise the territory of said
village, the names and valuation of all persons and corpora-
tions taxable within the village, as made by the town assessors,
and the same shall be deposited with the clerk of the board, or
one of the trustees, subject to inspection by any person inter-
ested."    Then follows a provision requiring that notice shall
be published that the roll has been deposited for inspection,
and appointing a time and place when and where the trustees
will meet to hear objections and make corrections, and the
section concludes as follows : " The said town valuation shall
be adopted by the trustees for the valuation of the property
thereon within the village, subject to be assessed for village
taxes, as far as practicable, subject, however, to be corrected
cf any errors which may appear thereon, or for any change of
ownership of property, or for increased value by reason of
improvements, or for diminished value by reason of fire or
damage by flood, and subject to have the names of persons
added or omitted, with valuations accordingly, as changes have

taken place, or when names or property have been omitted, which are subject to taxation, and may reduce or add to the valuation, and the trustees are hereby invested with the same powers within the village in respect to valuation and assessment of taxes, including the power to administer oaths, as town assessors have in respect to the valuation and assessment in towns."

It is contended on behalf of the relator that the village assessors, in making the assessments of the relator's property in 1886 and 1887, violated the charter in that they did not adopt the valuation made by the towns of Little Falls and Danube, appearing on the town assessment-rolls in the year preceding the respective assessments. The answer made to this complaint is two-fold ; *first,* that the charter requires the trustees to adopt the town valuations only " so far as practicable," and that as the town valuations related to the aggregate property of the relator, as well that within as that outside of the village, the adoption of those valuations was impracticable, and, *second,* that the provision in the charter that the trustees may " reduce and add to the valuation," and conferring upon them the powers of town assessors, authorized the trustees in their discretion to change the town valuation and in substance make an original assessment of the relator's property, when in their judgment it was proper to do so. We think neither of these answers sufficient.

It is very apparent from reading the evidence that the increase of the village assessment of the relator's property from $20,000 in 1885, to $40,000 in 1886, originated in a mistake of the village clerk in copying the town assessment-rolls. The whole acreage and valuation appearing on the town assessment-roll of the town of Little Falls, was copied by the clerk in preparing the village roll. It was thus made to appear that the relator owned forty-five and forty-seven-one-hundredths acres of land, of the valuation of $40,000, in the village, whereas that was the whole quantity owned by the relator in the town and of which only about fourteen

acres were within the village. The clerk omitted to copy the town valuation in the town of Danube, and apparently omitted from the valuation the five acres owned by the relator in the village, included within the limits of that town.

When the trustees of the village, acting as assessors, came to examine the assessment-roll copied by the clerk, they left the assessment against the relator to stand as copied, neither correcting the error in the acreage nor changing the valuation. There is evidence that they examined the property and considered the question of valuation, and reached the conclusion that the valuation of $40,000 was the fair and just value of the relator's property within the village. But it is clear from the evidence that in reaching this conclusion they wholly disregarded the valuation of $12,500 apportioned in the town assessment-roll of the town of Little Falls, as the valuation of that part of the relator's property in the town, within the village. This was, we think, erroneous.

By section 39 of the village charter the valuation of property in the town assessment-rolls was made the general rule of valuation for village taxes. The assessors of the village were required to adopt these valuations " as far as practicable," subject to certain exceptions. The valuation of the relator's property in the town of Little Falls, lying within the village, was plainly indicated on the assessment-roll of that town. The fact that it was primarily inserted as a way of discharging the duty of the town assessors to apportion the whole assessed value of the relator's property in the town among the school districts as prescribed by the act of 1867, does not alter the fact that it stood as a valuation by the town assessors of the relator's property within the village. The general statutes, it is true, do not require town assessors to assess the real property of an individual or corporation separately, according to the particular district or locality in the town where the property may be located. But we can perceive no objection in point of law to their exercising this discretion. In this case it was done for a particular purpose, and whether or not it was a compliance with the law of 1867, it did furnish on

the face of the assessment-roll the valuation of the relator's property in the town of Little Falls, located within the village, and this valuation the trustees were, we think, bound to adopt and follow, unless indeed the valuation had changed by reason of circumstances mentioned in section 39, which is not claimed. The error in the assessment of 1886 was not cured because of the fact that in the valuation of the relator's property by the town assessors of Danube in 1885, the valuation of that part of it within the limits of the village, was not separately stated, thereby rendering it necessary that the trustees should make an original valuation of that portion of the relator's property. They were bound to follow the town valuations as far as practicable, and in making the assessment they paid no attention to the valuation of the town roll of the town of Little Falls. That at least should have been incorporated as an element of the assessment.

The second answer to the allegation of error, viz., that the trustees had an absolute right to disregard the town valuations under that clause in section 39 of the charter, which declares that the trustees "may reduce or add to the valuation," depends upon the construction of this clause in connection with the other parts of the section. We concur in this respect in the opinion of one of the judges below, that the power given by the section to "reduce or add to the valuation" is confined to the exceptional cases mentioned therein. By the prior clauses in the section power was given to the trustees to add to or change the town assessments in certain specified cases, and, among others, "for increased value by reason of improvements, or for diminished value by reason of damage by fire or flood." It is difficult to suppose that the legislature, after specifying these cases, could have intended, by the subsequent general words, to give an unrestricted power to the trustees in every case where, in their judgment, the valuation was erroneous, to change the valuation appearing on the town rolls.

The assessment of 1887 was erroneous for the same reasons as the assessment of 1886, and for the additional reason that

the assessment-roll of the town of Danube for the year 1886 contained a separate valuation of the railroad property of the relator within the village.

The point is urged that the relator has lost his remedy under the act of 1880 by *laches.* This court held in the case of *People ex rel. Tel. Co.* v. *Commissioners of Taxes* (99 N. Y. 254) that a party complaining of an assessment, who had neglected to appear before the assessors or body authorized under the system provided by the tax laws to correct an erroneous assessment and seek his remedy there, could not, after the tax had become confirmed, avail himself of the remedy given by the act of 1880. We are of opinion that this case applies and bars this proceeding as to the tax of 1886. The relator did not appear on grievance day to have the assessment corrected, but relied on information not officially given, that the assessment would be the same as in 1885. This is rather a case of over-assessment than of a void assessment, as to which possibly a different rule would apply. The trustees had jurisdiction to assess the relator. They adopted an erroneous principle of valuation.

The proceeding as to the assessment of 1887 stands on a different footing. The relator did appear and object to the assessment in that year, and unavailingly sought its correction.

The point that the certiorari was not brought in time is answered by the fact that no notice was ever published of the final completion of the roll, and that the limitation prescribed in section 9 of the act of 1880 does not, therefore, apply, and also, by the cases of *People ex rel.* v. *Haupt* (104 N. Y. 377); *People ex rel.* v. *Hicks* (105 id. 199); *People ex rel.* v. *Assessors of Taxes* (106 id. 671).

The fact that the assessment-rolls, of which correction is sought, were not in the possession of the trustees when the writs were issued is, we think, unimportant. Under the act of 1880 the original assessment-rolls are not required to be returned in answer to the writ. They were in possession of the trustees or the clerk when the orders of the Special Term were made, and, moreover, the act contemplates granting of

relief, although the tax may have been collected, by reimbursement the following year.

We think the order of the General Term reversing the order of the Special Term based on the tax of 1886 should be affirmed, and that the order reversing the order of the Special Term based on the tax of 1887 should be reversed, and the order of the Special Term affirmed, without costs of this appeal to either party.

All concur.

Ordered accordingly.