THE PEOPLE OF THE STATE OF NEW YORK ex rel. TROY GAS COMPANY, Appellant, *v.* BENJAMIN E. HALL et al., Constituting the STATE BOARD OF TAX COMMISSIONERS et al., Respondents.

Tax — special franchises — when city assessors may apportion special franchise assessment between different parts of a tax district.

1. The intention of the Tax Law is to give the state board of tax commissioners exclusive power and authority to fix and determine the valuation of each special franchise subject to assessment in each city, town and tax district, and to lodge in local boards and officers the power and authority to apportion the valuation of a single special franchise for the purposes of assessment among school districts and where for other special reason it is required.

2. The state board of tax commissioners performs its full duty when it fixes and determines in one amount the value of a special franchise to occupy the streets and public places in a single tax district, with a continuous and unbroken line of pipes and wires.

3. Where certain territory in a city constitutes a separate school district which is not subject to taxation for general school purposes, the city assessors are authorized to apportion a special franchise, the

full value of which has been determined by the state board of tax commissioners, between such school district and the territory under the control of the board of education of such city.

*People ex rel. Troy Gas Co.* v. *Hall,* 143 App. Div. 756, affirmed.

(Argued October 4, 1911; decided November 21, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 27, 1911, which reversed an order of Special Term declaring invalid an assessment against the relator's special franchises and quashed a writ of certiorari to review the same.

The assessors of the city of Troy placed upon the assessment roll of said city for the year 1907 a special franchise assessment against the relator of $640,500, in two parts or items, as follows, viz.:

"Troy Gas Co., President and Directors of.
    "Special Franchise, value as fixed by State Tax Commissioners of State of New York, under Chapter 712, Laws of 1899, $600,000.00."
"Troy Gas Company, President and Directors of.
    "Special Franchise, value as fixed by State Tax Commissioners of State of New York, under Chap. 712, Laws of 1899, $40,500.00."

The first of said parts or items was placed in that part of said assessment roll including the assessments of persons and property in the third ward of said city, and the second of said parts or items in the seventeenth ward of said city.

This proceeding was thereafter commenced by certiorari to have it determined that said assessment was illegal by reason of overvaluation and inequality and because the assessors of the city of Troy had unlawfully apportioned and separated the same in placing it upon said roll.

The Special Term after taking testimony before a referee and obtaining his report with findings of fact

and conclusions of law in which he found that the assessment was not illegal by reason of overvaluation or inequality, but was unauthorized and void because of its being placed upon the roll in two parts or items instead of one entry or statement, directed that the said assessment as entered upon the roll be stricken therefrom. On appeal to the Appellate Division of the Supreme Court the order of the Special Term was reversed on the facts and law and the proceeding was quashed. (*People ex rel. Troy Gas Co.* v. *Hall,* 143 App. Div. 756.) Further facts are stated in the opinion.

*Alton B. Parker* for appellant. The assessments as entered on the Troy assessment books were unauthorized and void, because this relator is not one of the corporations whose franchises can, under the law, be apportioned between school districts. (*People ex rel. W. S. R. R. Co.* v. *Adams,* 125 N. Y. 471; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mohawk,* 61 Misc. Rep. 345; *People* v. *Gourley,* 198 N. Y. 486; *People ex rel. Rochester* v. *Priest,* 181 N. Y. 300; *Paige* v. *Willett,* 38 N. Y. 28.)

*George B. Wellington* for respondents. The franchises of the relator were taxable under section 2, subdivision 3, and section 43 (formerly section 42) of the Tax Law, and hence an apportionment between school districts was required by the latter section. (*People ex rel. W. S. R. R. Co.* v. *Adams,* 125 N. Y. 471.) The city of Troy is a single tax district. (*People ex rel.* v. *O'Donnel,* 183 N. Y. 9; L. 1906, ch. 473, §§ 11, 160.) The apportionment was made between school districts and was authorized by the Tax Law and the "White" charter of cities of the second class. (L. 1898, ch. 182, § 261; L. 1899, ch. 581; L. 1900, ch. 415.)

CHASE, J. The state board of tax commissioners fixed and determined the valuation of the relator's special

franchise subject to assessment in the city of Troy for
the year 1907 at $640,500.   Thereafter and on June 10,
1907, the day fixed in the notice therefor, the relator
appeared before such commissioners and asked that the
assessment be reduced upon the grounds of overvalua-
tion and inequality.   After hearing the relator, and on
June 26, 1907, said commissioners finally determined the
valuation of said franchise at $640,500 and filed a writ-
ten statement of the same with the clerk of the city of
Troy as provided by statute.

The city of Troy constitutes one tax district and has a
board of assessors authorized to assess property therein,
among other things, for state and county taxes.   The
relator is a domestic corporation engaged in the manu-
facture of gas and electricity.   The principal office of the
relator is in the third ward of said city, but the pipe
lines for the distribution of gas and the wires for the dis-
tribution of electric current are necessarily continuous,
and they extend through the third and into the seven-
teenth wards of said city, and the special franchise as
defined by statute in this case is one franchise requiring
a single assessment in the city of Troy.

The duty of the state board of tax commissioners is to
" annually fix and determine the valuation of *each*
special franchise subject to assessment in *each* city, town
or tax district."

It was held by this court in *People ex rel. N. Y. C. &
H. R. R. R. Co.* v. *Gourley* (198 N. Y. 486) that the
right of a steam railroad to cross streets and highways
constitutes at each such crossing an independent and
separate special franchise, and referring to the language
of the section directing the state board of tax commis-
sioners to fix and determine the valuation of each fran-
chise the court say: " This language indicates that it is
the value of each right to occupy the public property,
constituting the special franchise, which the state board
is required to determine." (p. 490.)   It was consequently

decided in that case that the state board of tax commissioners failed to perform its full duty when it fixed and determined the value of the franchises at nine independent public crossings at an aggregate amount, instead of by a valuation upon each franchise, particularly in view of the fact that in the case then under consideration, within the township including said nine crossings, were two incorporated villages, each having a board of assessors for village purposes. There is nothing in the *Gourley* case that holds that the state board of tax commissioners is required to divide a single special franchise into parts for valuation, or holding that the franchise of a railroad, telegraph, telephone, gas, electric light, pipe line or other similar company, when it is continuous and unbroken, is to be considered other than as a single franchise, except as it is required by the statute to be valued separately in each city, town or tax district.

This court considered the right of the Metropolitan Street Railway Company to occupy the streets in the city of New York as a single franchise in *People ex rel. Metropolitan Street Railway Company* v. *State Board of Tax Commissioners* (174 N. Y. 417). In the opinion in the *Gourley* case (p. 491), referring to the *Metropolitan Street Railway* case, the court say:

"The facts were such as to make the particular decision inapplicable here; for the railway was within the streets of the city of New York and all its properties in rights and privileges were managed as one piece of property. As it was said by Judge EARL, the referee in that case, speaking of the relator's special franchises, 'there was nothing in the streets to distinguish one from the other.'"

The state board of tax commissioners performed its full duty, therefore, when it fixed and determined, in one amount, the value of the relator's special franchise to occupy the streets and public places of the city of Troy with a continuous and unbroken line of pipes and wires.

Except for special circumstances the duty of the assessors of the city of Troy was plain and that was to enter the amount of the assessment of the special franchise as fixed and determined by the state board of tax commissioners upon the assessment roll of the city against the relator in the ward in which its principal office and place of business is located.

There were peculiar facts and circumstances affecting the determination of the tax rate in different parts of the city of Troy. In 1900 the city of Troy enlarged its boundaries by adding a large territory which included all of the then existing village of Lansingburg and other territory. Included in the act so increasing the boundaries of the city of Troy (Laws of 1900, chap. 665) is a section as follows: "Union free school district number one of the town of Lansingburg shall not be affected by this act; and no assessment shall be made or tax levied by the city of Troy, for school purposes, upon real property situate, or personal property of persons residing in that portion of the enlarged city of Troy which is situate within the present limits of, said union free school district." (Section 5.) Union Free School District No. 1 of the town of Lansingburg included in its boundaries the same territory then included in the village of Lansingburg, and it now constitutes the seventeenth and other wards of the present city of Troy. The territory comprising the city of Troy, other than the part thereof included in said Union Free School District Number 1 in the town of Lansingburg, is for school purposes under the control of the board of education of the city of Troy and subject to taxation for school purposes in that part of the city of Troy not including the old village of Lansingburg. Provision was also made in said act enlarging the boundaries of the city of Troy that the portion of the enlarged city of Troy which is bounded by the limits of the city at the time when said act took effect should pay the maturing indebtedness of the said old city of Troy. A similar provision was also made in

regard to that part of the new city of Troy within the said village of Lansingburg, and a still further provision for that portion of said city of Troy which then constituted parts of the towns of North Greenbush, Brunswick and Lansingburg.

The assessment against the relator bears the same proportion of all state, county and city tax whether it is placed upon the assessment roll of the city in one or several different amounts. The valuation of the relator's special franchise was divided for the purpose of determining the rate on that part thereof within the old city of Troy and the old village of Lansingburg respectively for school taxes and for the payment of maturing indebtedness arising prior to the enlargement of the city boundaries in 1900.

It is provided by the Tax Law (Cons. Laws, chap. 60, section 40; former Tax Law, Laws 1896, chap. 908, section 39): "The assessors of each town in which a railroad, telegraph, telephone or pipeline company is assessed upon property lying in more than one school district therein, shall, within fifteen days after the final completion of the roll, apportion the assessed valuation of the property of each of such corporations among such school districts.    *    *    *."

It is also provided by the Tax Law (section 43, former section 42) that the state board of tax commissioners shall annually fix and determine the valuation of each special franchise subject to assessment in each city, town or tax district, as in said section expressly provided, and that the valuation of every special franchise as so fixed by the state board shall be entered by the assessors or other officers in the proper column of the assessment roll before the final revision and certification of such roll by them, and become part thereof with the same force and effect as if such assessment had been originally made by such assessor or other officer. And it is therein further provided: "The town assessors shall make an apportionment

among school districts at the time and in the manner required by section forty of this chapter." This part of the section just quoted refers generally to all valuations of special franchises and includes the special franchise of the relator. City assessors are given the same power to apportion special franchises among school districts as town assessors.

Under the so-called White Charter (Laws of 1898, chap. 182) it was provided that city assessors "shall perform the duties and possess the powers conferred upon assessors in the towns of the state" (section 261). A similar provision is now contained in the Second-Class Cities Law (Laws of 1906, chap. 473, now chap. 53 of the Consolidated Laws, chap. 55 of the Laws of 1909, sec. 160).

Authority is also given to local boards and officers to apportion the valuation of a special franchise by said section 43, as follows: "If a part only of such special franchise is in a village, or is in a village situated in more than one tax district, it shall be the duty of the village assessors to ascertain and determine what portion of the valuation of such franchise, as the same has been fixed by the state board, shall be placed upon the tax roll for village purposes. The valuation apportioned to the town shall be the assessed valuation for highway purposes, and in case part of such special franchise shall be assessed in a village and part thereof in a town outside a village, the town assessors shall meet on the third Tuesday in August in each year and apportion the valuation of such special franchises between such town outside the village and such village for highway purposes."

There is no provision of the statute requiring or authorizing the state board of tax commissioners to divide and apportion the valuation of a single special franchise. We repeat that its full duty was performed when it fixed and determined the valuation of the relator's special franchise and filed it with the clerk of the city.

It is doubtless true that the direction to apportion a special franchise valuation among school districts has in ordinary cases special reference to an apportionment for an independent roll to be used for school purposes. (*People ex rel. West Shore R. R. Co.* v. *Adams,* 125 N. Y. 471.)

The language of the Tax Law does not, it may be assumed, provide specifically just what shall be done by city assessors in the peculiar and unusual situation which presented itself to the assessors of the city of Troy. Express provision is made for an apportionment among school districts and in other cases where an apportionment is required.

The intention of the Tax Law seems to have been to give the state board of tax commissioners exclusive power and authority to fix and determine the valuation of each special franchise subject to assessment in each city, town and tax district and to lodge in local boards and officers the power and authority to apportion the valuation of a single special franchise for the purposes of assessment among school districts, and where for other special reason it is required.

We think the assessors of the city of Troy were authorized, in want of further legislation on the subject, to apportion the special franchise of the relator as between the school districts comprising the territory of the present city of Troy, and so place the same upon the said assessment roll as to carry out the provisions of the statutes that we have enumerated, providing not only for the assessment of school taxes within the several school districts of said city, but for the payment of the maturing indebtedness incurred prior to the statute of 1900. If the relator was in any way aggrieved thereby, it should have appeared before the local assessors and made its complaint on the grievance day appointed pursuant to the statute. The state board of tax commissioners were not " the proper officers to correct such assessment " within

the meaning of section 290 of the Tax Law, so far as the form of entering the same on the assessment roll is concerned.

It does not appear from the record that there was at any time in this proceeding any competent evidence to show that the relator's special franchise is illegal for over-valuation or by reason of inequality of valuation in comparison with other assessments in the city of Troy.

The referee appointed by the Special Term so found, and the order of the Appellate Division necessarily includes a determination to that effect by that court.

The order should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Order affirmed.