In the Matter of CHARLES H. STEVENS et al., Petitioners, against FREDERICK K. NEAR, as Chairman of the Board of Assessors of the Town of East Greenbush, Rensselaer County, et al., Respondents.

Supreme Court, Special Term, Albany County, January 5, 1952.

*Richard A. Graham* for petitioners.

*Ernest L. Boothby* and *Ernest B. Morris* for respondents.

HAMM, J.   This is a proceeding brought under article 13 of the Tax Law to review the assessment made July 1, 1949 (Tax Law, § 9) on property in the town of East Greenbush in Rensselaer County.   After a reference the respondents now move to confirm the assessment on the petitioners' property; the petitioners submit an answering affidavit asking that the Referee's report be confirmed.

The petitioners allege that the assessment is unequal in that it has been made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers.   (Tax Law, § 290-c.)   The assessment complained of is $18,000; it was reduced by the assessors from $20,000 to the present figure after consideration on grievance day of the tax-payer's protest.

" Section 293 of the Tax Law empowers the court to correct an unequal assessment so as to ' make it conform to the valuations and assessments of other property upon the same roll and secure equality of assessment.'   It also provides: ' Upon the hearing the parties to the proceeding may mutually agree on parcels of real estate to be valued  *  *  *.   But in case the parties fail to agree on a selection of parcels to be valued *  *  *  then upon application of either party the court or referee shall  *  *  *  select the parcels that shall be valued

without reference to their assessed values, and both parties shall be limited in their proof on the trial to * * * the parcels so selected, except that evidence as to actual sales of real property within the tax district that occurred during the year in which the assessment under review was made may be given by either party.'" (*People ex rel. Hagy* v. *Lewis*, 280 N. Y. 184, 186.) The petitioner and the respondents in conformity with these provisions of the Tax Law submitted comparison parcels and the Referee duly selected parcels from each list.

After the decision in *People ex rel. Yaras* v. *Kinnaw* (277 App. Div. 1062) and before the decision in *People ex rel. Yaras* v. *Kinnaw* (303 N. Y. 224) county and State equalization rates were admitted in evidence. Nothing indicates that the Referee was influenced in his decision by the admission of this testimony.

At the hearings before the Referee the petitioners employed but one expert witness and the respondents likwise caused only one expert witness to be sworn on their behalf. The average ratios of assessment found by the petitioners' expert, the Referee and the respondents' expert were as follows:

| | |
|---|---|
| Petitioners' expert | 19.7% |
| Referee | 24 % |
| Respondents' expert | 31.8% |

But the petitioners' expert, however, testified that the full value of the property under consideration was $47,500 and the Referee adopted his valuation. This finding the Referee made although the petition states in the fifth paragraph: " That a verified formal, written application, complaint and protest for the correction of said 1950 tax assessment set forth in paragraph one (1) hereof has been made on the form provided by said Board of Assessors and presented to and filed with said Board of Assessors on August 9, 1949." The " verified formal * * * protest " contains the following question and answer: " What do you consider was the value of the property on the First day of July of this year? " " $60,000.00 ".

The protesting taxpayer is limited on the hearing before the court by the allegations he made to the assessors. This is true although a proceeding under article 13 of the Tax Law is *venire de novo* and not merely a review of the evidence before the assessors.

It is, for instance, well settled, that no reduction may be granted in excess of the amount demanded in the application to the assessors (*Matter of Wright* v. *Commissioner*, 242 App.

Div. 886 [3d Dept.], affd. 267 N. Y. 615; *Matter of 56 North Pearl St.,* 242 App. Div. 887 [3d Dept.], affd. 267 N. Y. 615).

Nor may a complaining taxpayer adopt one position before the board of assessors and, after the assessors have acted on the statements in his protest, take a different position in court in an effort to review the assessors' action. In *Hilton* v. *Fonda* (86 N. Y. 339) the town assessors, with knowledge of the true state of facts, assessed certain lands in their town to the plaintiff personally instead of placing them in the column of non-resident lands as the existing statute required them to do. On grievance day the plaintiff's agent, after examining the roll, did not object that the lands were illegally entered against the name of his principal as owner but made complaint only as to the valuation. The valuation was reduced in accordance with the protest. The plaintiff subsequently brought an action against the assessors to hold them personally liable for their failure to follow the course prescribed by statute. It was held that, although the defendants had no jurisdiction to assess the lands to the plaintiff personally, the action of the plaintiff, through his agent, amounted to a waiver and that the suit could not be maintained. At page 350, Chief Judge FOLGER said: " he was liable to be understood as tacitly assenting to all of which he did not openly complain; that he was so understood; that he was bound to know that he was likely to be so understood; that he did not mean to be understood otherwise, and did perceive that he was not understood otherwise." And at page 352 the Chief Judge made this inquiry and answer: "May a person having knowledge of the course prescribed by law to an official, look on and see the officer innocently turn aside therefrom, and withhold from saying the word that would recall him to the lawful track, may he, by silence and acts and words and seeming acquiescence, encourage him in his departure, and then maintain an action against him in his personal capacity therefor? We think not. Such conduct the law will hold to be a waiver of the right of the party to have an exact compliance with the statute in his favor."

In *Matter of McLean* (138 N. Y. 158) the court said at page 163: " The proceedings for the assessment of property are of a judicial character, and the assessors in making an assessment act judicially, and the law provides for the appearance before them of parties deeming themselves aggrieved by their proposed action, and the submission of proofs to support the complaint made, and a final determination by the assessors thereon, and the rule referred to is applicable to such a proceeding, and pre-

cludes a party, who appears before them and asks to have his assessment reduced and obtains a reduction and makes no other objection, from subsequently claiming that they had no jurisdiction to tax him at all." In *People ex rel. Champlin* v. *Gray* (185 N. Y. 196) the court, in holding that it was error to adjudge an assessment invalid, stated at pages 200–201: " Other objections to its validity are now suggested, but the only one specified to the board of assessors on grievance day was that the land was assessable in the town of Whitestone and not in the village of Yorkville. Under the circumstances the sufficiency of the other objections is not now open for judicial consideration. (*Hilton* v. *Fonda,* 86 N. Y. 339.) "

In *People ex rel. Powdered Milk Co. of America* v. *Rowe* (161 N. Y. S. 1064, 1065), it was stated in a certiorari proceeding: "Objections not specifically pointed out to the assessors on grievance day are not available for review in proceedings of this character. People v. Gray, 185 N. Y. 196, 200, 77 N. E. 1172; People v. Tax Commissioners, 99 N. Y. 254, 1 N. E. 773; People v. Adams, 125 N. Y. 471, 484, 26 N. E. 746."

In *People ex rel. Masonic Hall Assn.* v. *White* (126 Misc. 661, affd. 218 App. Div. 38, affd. 244 N. Y. 564) the relator alleged before the assessing officer on grievance day that its property was totally exempt from taxation and in court asserted a claim for partial exemption. At page 668, Mr. Justice HEFFERNAN stated:

" As I view it the relator is not entitled to have its claim for partial exemption considered. No foundation for such relief was laid in the protest filed with the assessing officer on grievance day as provided by section 37 of the Tax Law (as amd. by Laws of 1924, chap. 491). In that petition the relator alleged ' that said corporation is organized exclusively for fraternal, charitable, benevlent [*sic*] and educational purposes; that said property is used exclusively for carrying out thereupon such purposes, and also further alleges that it is totally exempt from taxation, and is illegally and erroneously assessed and in any event is over-valued, and is assessed at a higher proportionate valuation than other property on the same assessment roll.'

" No claim was made at that time that all portions of the building not occupied by the Masonic Club were exempt from taxation. No such suggestion was made to the assessing officer in the petition. There is no allegation in that petition upon which any claim for partial exemption can be predicated and the writ was not allowed on that theory. Objections not specifically pointed out to the assessors on grievance day are not

available on certiorari. (*People ex rel. Powdered Milk Co. of America* v. *Rowe,* 161 N. Y. Supp. 1064; *People ex rel. Champlin* v. *Gray,* 185 N. Y. 196; *People ex rel.* [*Mutual Union Tel. Co.*] v. *Commissioners of Taxes, etc.,* 99 id. 254; *People ex rel. W. S. R. R. Co.* v. *Adams,* 125 id. 471.) Relator's counsel asserts that the pleadings should be liberally construed and relief should not be denied on any technical ground. If this were solely a question of pleading that would be true. The difficulty here lies in the nature of the protest filed with the assessing officer. The relator must stand on the objections there formulated and the court cannot at this date permit any amendment in that respect.''

The petitioners may not now be granted a reduction based on denial of the claim of full value sworn to and submitted to the assessors; the full value of his property must be fixed at the sworn valuation of $60,000.

The remaining question is the validity of the Referee's finding of an average ratio of assessment of 24%. '' Such reference is to inform the conscience of the court, which can adopt the referee's findings or disregard them and draw its own conclusions. (*Marshall* v. *Meech,* 51 N. Y. 140.) The findings of the referee are a part of the proceedings, upon which the court shall make its determination; it may accept the findings in part and in part make its own findings.'' (*People ex rel. Haile* v. *Brundage,* 195 App. Div. 745, 746.) The findings of fact and conclusions of law of the Referee constitute only '' a part of the proceedings upon which the determination of the court shall be made '' (Tax Law, § 293). Of course, the presumption that the assessors' valuation is not excessive '' is not evidence but serves in place of evidence until the opposing party comes forward with his proof, whereat it disappears.'' (*People ex rel. Wallington Apts.* v. *Miller,* 288 N. Y. 31, 33.) Moreover, it must be recognized that the Referee, who has seen and heard the witnesses, who has had opportunity to question them and to guide the course of the hearing, and who has been authorized by stipulation to view the premises and the selected parcels, has an advantage over the Justice who must reach his conclusion on the exhibits and written record only.

But the petitioners' expert was asked the following questions and made the following answers:

'' Q. So your belief is based upon two factors then, I take it. First, the location of the property; second, the potential earnings? A. Yes, and of course the construction of the property, cost of construction.

"Q. The third is cost of construction? A. That is just approximately.

"Q. Are those the three methods that you applied in each of these instances to ascertain your opinion of the value? A. Yes.

"Q. So that going first to the East Greenbush garage, the Canaday property, you attempted to appraise a value there and you used as your basis for that value, 1, the potential earnings; 2, the location; and, 3, the reconstruction cost, did you? A. No, I didn't go into reconstruction cost.

"Q. You didn't go into the reconstruction cost there? A. No.

"Q. Did you go into the reconstruction cost in any of the instances that you have testified to? A. I did not.

"Q. So that we can eliminate reconstruction cost as far as your appraisals are concerned, can we? A. That is right."

As to land values there was substantial agreement. As to the buildings the respondents' expert, with an exception as to a new building which had not depreciated, considered reproduction cost minus depreciation and obsolescence and his total valuation of the comparison parcels did not exceed reproduction costs minus depreciation and obsolescence. He found a total valuation of $284,200. The aggregate of the assessments, $90,-300, divided by the total valuation results in an average ratio of assessment of 31.8%.

The general rule is that property in assessment review proceedings may not be evaluated at more than reconstruction costs minus depreciation. The rule has been stated as follows in *People ex rel. Manhattan Square Beresford* v. *Sexton* (284 N. Y. 145, 148–149): "The issue is solely as to the value of the building which is a twenty-story apartment house. The reduced values were based upon a valuation arrived at by capitalization of potential income and substantially exceeded the reconstruction cost less depreciation as testified to by relator's uncontradicted expert witness, who had a large and varied experience for upwards of twenty years in building construction. In adopting that method of valuation reliance was placed entirely upon the testimony of a witness who confessed that he could not and did not figure reconstruction cost less depreciation in reaching his conclusions. In assessing an improvement upon real estate for tax purposes the maximum value which ordinarily may be placed upon it is reconstruction cost less depreciation. The value of the improvement arrived at by capitalization of potential or actual income may well be weighed and considered but if it be more than reconstruction cost less depre-

ciation, at least in the absence of extraordinary circumstances not present here, the latter still remains the maximum value which may be assessed upon the property.''

The premises in question are an apartment house containing seven apartments and a dentist's office. In *People ex rel. Hotel Paramount Corp.* v. *Chambers* (298 N. Y. 372) Judge FULD at page 375 had occasion to state: '' Giving to the hotel income or to the sale of the hotel enterprise any additional weight was error for an additional reason, having to do more particularly with the valuation of the building. Structural value fixes the maximum value even of an apartment house or office building whose income if capitalized would indicate a higher valuation. (See *People ex rel. Manhattan Square Beresford, Inc.,* v. *Sexton,* 284 N. Y. 145, 149; *People ex rel. Parklin Operating Corp.* v. *Miller,* 287 N. Y. 126, 131.) ''

On the other hand quite apparently the court is not required to accept incredible testimony. In *People ex rel. Beadleston & Woerz* v. *Miller* (N. Y. L. J., Dec. 19, 1940, p. 2116, col. 4), it was stated at Special Term for the County of New York: '' There are two situations involved in this proceeding which require comment. The first is with respect to the fact that the respondents did not offer any proof as to the reconstruction cost of the premises less depreciation, while the relator offered the testimony of two experts as to such value. One of these experts is an architect and builder who had charge of the erection of the building. The court holds that the rule laid down in *People ex rel. Manhattan Square Beresford, Inc.,* v. *Sexton* (288 N. Y. 145) is controlling. Therefore the value based upon reconstruction cost less depreciation is the highest figure at which the court may fix the value of the building. However, this does not mean that all such expert testimony is binding on the court so that it must blindly follow the figure of the expert. If that were so a serious injustice might result which it is the court's duty to prevent. Even though no testimony is offered by the opposing party to contradict the testimony of a real estate expert as to reconstruction cost less depreciation, it is still within the province of the trier of the facts to reject the expert's testimony, or give it such weight as it may deserve.''

But the case here is not the situation described above. On the contrary the testimony of the respondents' expert is clear and convincing while the evidence given by the petitioners' expert is quite unpersuasive. For instance, the petitioners' expert, '' unable to give any intelligible reason for his opinion '' (*Close* v. *Witbeck,* 126 App. Div. 544, 546) testified:

"Q. Have you anything at all in your mind, Mr. Witness, about this, except that you somewhere got a number out of the air — $140,000? A. That is my observation, that I believe the property is worth $140,000.

"Q. You can't tell us any fact on which you base that opinion? A. No, sir, I am not going to attempt to.

"Q. You are not going to attempt to? A. No, sir."

Moreover, he capitalized gross rental saying: "That is the major bearing that I have always used." When asked to cite authority for such a method he answered: "I don't go into that, sir, and I couldn't answer that question." Moreover, he did not attempt to ascertain the net income of any property which he had appraised.

And in no instance did he consider construction costs minus depreciation.

The testimony of inexpert witnesses called by the petitioners as to factual matters serves only to render the testimony of their expert less convincing.

31.8%, the testimony of the respondents' expert, is found to be the average ratio of assessment. Applying this ratio of 31.8% to the full value of $60,000 sworn to by the petitioners results in an assessment of $19,080, $1,080 more than the existing assessment sought to be reduced.

The assessment must be confirmed.

The Referee's fee is fixed in the sum of $450.

Pursuant to the stipulation into which the parties entered and to the permissive provisions of section 294 of the Tax Law costs and disbursements are awarded against the tax district represented by the officers whose proceedings are reviewed.

Findings of fact and conclusions of law may be submitted in accordance with this decision.